UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

In re:

NICHOLAS GRAVEL and

AMANDA GRAVEL

    Debtor.

Case No.: 11-10112

Chapter 13

### RESPONSE TO PHH MORTGAGE CORPORATION'S OPPOSITION TO THE CHAPTER 13 STANDNG TRUSTEE'S MOTION FOR CONTEMPT AND SANCTIONS

Now Comes Jan M. Sensenich, Chapter 13 Standing Trustee, by and through Michelle Kainen, and responds to PHH's opposition as follows:

1. The debtors' Chapter 13 case was filed on February 11, 2011.

2. On June 13, 2016 the trustee filed a Motion for Contempt and Sanctions against PHH Mortgage Corporation (hereinafter, "PHH") because it had charged property inspection fees in the amount of $258.75 on statements sent to the debtors and trustee without filing notice with the court.

3. PHH's opposition acknowledges the violation of Federal Rule of Bankruptcy Procedure 3002.1, in that it failed to file the appropriate notice with the court regarding those fees. However, PHH mischaracterizes the extent of the violation. In its response it writes:

> "The Fees were mistakenly included on <u>one mortgage statement</u> and were rectified by PHH immediately upon notice from the Trustee of same. The following month's statement reflected that the Fees had been waived and removed from the Debtors' account." (emphasis added)

(doc. #77 at ¶ 13).

4. A review of the debtors' mortgage statements from PHH illustrates that the fees did not appear on just "one mortgage statement" as alleged. In fact,

-1-

these fees accumulated over a period of years and appeared on the debtors' monthly statements for a period of several years, not just one month. (Exhibit 1)

a.  The earliest statement received from PHH by the trustee was dated March 2, 2011 and shows late charges of $245.38, NSF fees of $60.00 and Property Inspection fees of $86.75.

b.  The September 2, 2011 statement shows the late charges of $245.38, the NSF fees of $60.00 and an increase in the property inspection fees to $98.00.

c.  The November 3, 2011 statement shows the late charges of $245.38, the NSF fee of $60.00 and an increase in the property inspection fee to $109.28.

d.  The February 6, 2012 statement shows the late charges of $245.38, the NSF fee of $60.00 and an increase in the property inspection fees to $149.00.

e.  The June 5, 2012 statement shows the late charges of $245.38, the NSF fee of $60.00 and a decrease in the property inspection fees to $143.00.

f.  The July 2, 2012 statement shows the late charges of $245.38, the NSF fees of $60.00 and an increase in the property inspection fees to $165.50.

g.  The October 2, 2012 statement shows the late charges of $245.38, the NSF fee of $60.00 and an increase in the property inspection fees to $176.75.

h. The November 2, 2012 statement shows the late charges of $245.38, the NSF fees of $60.00 and an increase in property inspection fees to $188.00.

i. The December 5, 2012 statement shows the late charges reduced to zero, the NSF fees of $60.00 and an increase in the property inspection fees to $199.25.

j. The January 4, 2013 statement shows the NSF fees reduced to zero, and the property inspection fees decreased to $123.75.

k. The February 12, 2013 statement shows the property inspection fees increased to $135.00.

l. The April 24, 2013 statement shows the property inspection fees reduced to zero.

m. The May 20, 2013 statement shows the property inspection fees increased to $168.75.

n. The June 17, 2013 statement shows the property inspection fees increased to $180.00.

o. The July 17, 2013 statement shows the property inspection fees increased to $191.25.

p. The August 27, 2013 statement shows the property inspection fees increased to $202.50.

q. The September 30, 2013 statement shows the property inspection fees increased to $213.75.

    r. By the May 31, 2014 statement the property inspection fees had increased to $258.75.

    s. These fees remained on the monthly statements up to, and including, the May 25, 2016 statement.

5. PHH continued to bill for these fees even after this court issued its order on the Trustee's Motion for Determination of Final Cure and Payment, which stated that the debtors had made all payments, including "any other charges or amounts due under their mortgage with PHH Mortgage Corporation". (doc. #74).

6. It should be noted that similar activity occurred in three other cases.[1]

7. Additionally, this Court has previously ordered PHH to pay these debtors $9,000 in sanctions in this case, directly related to mortgage accounting issues. (doc. #49).

## Argument

If the fees had only shown up on a single statement in a single case, the trustee would have first attempted to resolve the matter short of motion practice. However, the violation of Federal Rule of Bankruptcy Procedure 3002.1 appears to be part of the business practices of PHH, and far from an isolated incident. In its opposition PHH makes a point of noting that the monthly mortgage statements were "electronically-generated". (doc. #77 at ¶8). This furthers the trustee's position that these violations are not merely human error in an isolated case, but a problem in the manner that PHH's

---

[1] *Allen and Laurie Beaulieu*, Case No. 11-10281, *In re Matthew and Emilie Knisley*, Case No. 12-10512 and *In re Kevin and Melissa Daley*, Case. No. 14-10333

computer system is programmed to treat post-petition fees in bankruptcy. The scope of the problem appeared to be significant enough to warrant judicial intervention.

This is not the first time a bankruptcy court has been confronted with PHH's violation of Rule 3002.1(c). *In re Owens*, No. 12-40716, slip op. (Bankr. W.D.N.C. January 15, 2014). The court in that case declined to award sanctions, but stated:

> Since this is a matter of first impression, the Court will not assess costs or fines pursuant to Rule 3002.1(i)(2). Each party will bear its own costs. However, the court may consider awarding relief as against PHH under Rule 3002.1(i) should it come up in the future.

*Id*. at *7. PHH had its "free-bite-at-the-apple" in North Carolina for the identical conduct. It should not be granted another here.

PHH argues that no harm was caused because the trustee did not pay the fees. The trustee had no authority to pay the improperly assessed fees. If no harm was caused, it is because PHH wisely removed the fees when it realized it had been caught violating the rule (again). Had the trustee not addressed this issue, those fees would have likely remained on the debtors' account following the conclusion of this case, which would have denied the debtors the fresh start they are entitled to. This is the exact conduct that Rule 3002.1 was enacted to prevent.

PHH further argues that it "has not violated a Court Order…" (doc. #77 at ¶ 25). In doing so PHH complete ignores this Court's order which determined that the debtors had paid all "charges or amounts due under their mortgage with PHH Mortgage Corporation" and which prohibited PHH from asserting otherwise. (doc. #74). PHH cannot argue that it did not have knowledge of the order, because it filed a response to the motion, agreeing with the numbers set forth in the motion. (doc. #72). PHH also ignores the stipulated order which states that the debtors were current post-petition as of March 31, 2014. (doc. #49). Based on the debtors' mortgage statements, PHH was

continuing to add property inspection fees to the debtors' mortgage, at the time it stipulated to that order. (Exhibit 1).

The issue now isn't whether or not PHH violated Rule 3002.1 or this Court's orders.  PHH has admitted to the wrongful conduct.  The question here is what is the proper consequence for the violations?  PHH seeks to limit any sanction to attorney's fees and costs.  Essentially, PHH would like the freedom to violate the rule and orders and only have to pay attorney's fees if caught. PHH's minimization of its conduct by inaccurately characterizing the violation as occurring on just "one mortgage statement" demonstrates that PHH has failed to appreciate the extent of its violations.  If it is unable to appreciate the extent of its conduct on its own, a monetary sanction sufficient to deter the conduct may be the only method of ensuring future compliance with the rule and this Court's orders.

Rule 3002.1 permits the court to "award other appropriate relief, including reasonable expenses and attorney's fees" for a violation of the rule.  Fed. R. Bankr. P. 3002.1(i)(2). Furthermore, 11 U.S.C. § 105 permits the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  The trustee does not seek attorney's fees in this case, but given the nature of these violations, the trustee requests a monetary sanction, to be paid to a non-profit legal services corporation, in an amount sufficient to make violation of Rule 3002.1 an unprofitable business practice.

Respectfully submitted,

Dated: July 14, 2016

/s/ *Michelle Kainen*

Michelle Kainen,
Staff Attorney to
Chapter 13 Standing Trustee
P.O. Box 1326
Norwich, VT 05055
michellekainen@vermont13trustee.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) generated in connection with this document and paper copies will be sent to those indicated as non-registered participants on **July 14, 2016** at the following addresses:

| Alexandra Edelman | Kathleen Walls | Jan Sensenich | U S Trustee |
|---|---|---|---|
|  |  |  | 74 Chapel St, Ste 200 |
| (BY CM/ECF) | (BY CM/ECF) | (BY CM/ECF) | Albany, NY 12207-2190 |
|  |  |  | (BY CM/ECF) |

Dated: July 14, 2016

/s/ *Michelle Kainen*
Michelle Kainen