*Formatted for Electronic Distribution*                                                                                                          *For Publication*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**

---

**In re:**
    **Nicholas and Amanda Gravel,**
        Debtors.

Chapter 13 Case
# 11-10112

Filed & Entered
On Docket
September 12, 2016

---

**In re:**
    **Allen and Laurie Beaulieu,**
        Debtors.

Chapter 13 Case
# 11-10281

---

**In re:**
    **Matthew and Emilie Knisley,**
        Debtors.

Chapter 13 Case
# 12-10512

---

*Appearances:*   Jan Sensenich and Michelle Kainen      Alexandra Edelman
                 *Office of the Chapter 13 Trustee*          *Primmer Piper Eggleston & Cramer, PC*
                 *Norwich, Vermont*                        *Burlington, Vermont*
                 *For the Trustee*                           *For the Creditor*

**MEMORANDUM OF DECISION**
**GRANTING TRUSTEE'S MOTIONS TO SANCTION PHH MORTGAGE CORPORATION,**
**DISALLOWING PHH MORTGAGE'S POST-PETITION CHARGES, AND**
**DIRECTING PHH MORTGAGE TO PAY SANCTIONS TO LEGAL SERVICES LAW LINE OF VERMONT**

        The Chapter 13 trustee filed a motion asking this Court to make a finding of contempt, disallow certain post-petition fees, and impose sanctions on PHH Mortgage Corporation, in each of the three above-captioned cases, based upon PHH Mortgage Corporation's failure to comply with Bankruptcy Rule 3002.1 and its violation of this Court's orders.

        For the reasons set forth below, the Court makes the following findings. First, in all three of the instant cases, the Court finds PHH Mortgage Corporation failed to comply with Bankruptcy Rule 3002.1, and that misconduct warrants the disallowance of all post-petition charges and an award of sanctions, under Rule 3002.1(i) and § 105. Second, the Court finds PHH Mortgage Corporation violated this Court's orders in the Gravel and Beaulieu cases, and additional sanctions are warranted under this Court's inherent powers and § 105 for this violation. Third, the Court finds it is most equitable for PHH Mortgage Corporation to pay the sanctions to a nonprofit legal services entity.

        Based upon these findings, the Court imposes a sanction of $375,000 and directs PHH Mortgage Corporation to pay that sum to Legal Services Law Line of Vermont.

**PROCEDURAL HISTORY**

While the Chapter 13 trustee's allegations are similar in all three cases, each case has a distinct procedural posture. Therefore, a brief summary of each case's procedural history, as well as any unique arguments the parties raised, is set forth below.

*1. In re Gravel (Chapter 13 case # 11-10112)*

On May 20, 2016, the Court entered an order determining Mr. and Mrs. Gravel had cured all pre-petition mortgage defaults, and were current on all post-petition mortgage payments, to PHH Mortgage Corporation (referred to herein as "PHH" or "the Creditor"). That order (doc. # 74, the "Debtors Current Order") declared

> the debtors, by their payments through the Office of the Chapter 13 Trustee, have made all payments due during the pendency of this case through April 1, 2016, **including all monthly payments and any other charges or amounts due under their mortgage with PHH Mortgage Corporation.**

Doc. # 74 (emphasis added). On May 25, 2016, five days after entry of the Debtors Current Order, PHH sent the Debtors a mortgage statement for the month of May 2016 (the "May Statement") which, contrary to the recently entered Debtors Current Order, asserted property inspection fees of $258.75 were due.

On June 13, 2016, the Chapter 13 trustee (hereafter "the Trustee") filed a motion for contempt and sanctions (doc. # 75, the "Gravel Sanctions Motion"), asserting PHH sent the May Statement in violation of the Debtors Current Order and had assessed post-petition charges to Mr. and Mrs. Gravel's account without filing the notice required under Rule 3002.1(c). The Gravel Sanctions Motion seeks three types of relief. First, the Trustee seeks a declaration that the Creditor is in contempt of court for violating Rule 3002.1 and the Debtors Current Order. Second, the Trustee requests an order directing the Creditor to remove the post-petition property inspection fees from the Gravels' account. Third, the Trustee asks the Court to impose civil contempt monetary sanctions on PHH for its violation of both Rule 3002.1 and the Debtors Current Order, and direct PHH to pay those sanctions to a non-profit legal services agency.[1]

In PHH's opposition to the Gravel Sanctions Motion (doc. # 77, the "Creditor's Opposition"), it (i) admitted the property inspection fees were erroneously included in the electronically-generated May Statement, (ii) acknowledged the fees were more than 180 days old, (iii) conceded it did not file a notice of post-petition fees (as required by Rule 3002.1(c)), and (iv) averred that, upon notice of the Trustee's Gravel Sanctions Motion, it promptly waived and removed the fees from the Gravels' account. It concluded the Court should deny the Trustee's motions for sanctions because (1) the Debtors suffered no

---

[1] The Trustee acknowledges the improperly assessed charges in this case are not substantial, and that neither he nor the Debtors suffered any direct financial harm from PHH's claim for those sums. However, he asserts it is important to impose sanctions because PHH's unauthorized charging of post-petition fees to debtors' mortgage accounts is a "systemic problem," which will likely continue unless it suffers a monetary consequence for this behavior. The Trustee suggests that under these facts it would be most equitable to direct PHH to pay a monetary sanction to a non-profit entity (doc. # 75, pp. 2-3).

harm, because the Debtors never paid the charges in question; (2) the purpose of Rule 3002.1 was not frustrated because PHH ultimately removed the charges from the Debtors' accounts and waived its right to collect them; (3) its conduct did not constitute civil contempt because its inclusion of the post-petition charges on the May Statement was a "one-time error"; and (4) it did not violate any court order. PHH also emphatically disputed that there was any "systemic problem."[2]

In response, the Trustee contended PHH's improper billing of the post-petition charges without notice warranted a sanction for violation of Rule 3002.1. He argued that PHH's conduct caused no harm *only because* the Trustee recognized the charges were improperly assessed, and instead of paying these charges, he filed the Gravel Sanctions Motion, which prompted the Creditor to remove them. He further asserted PHH only removed those charges because "it realized it had been caught violating [Rule 3002.1] (again)" (doc. # 78, p. 5). The Trustee also argued the Creditor's conduct did indeed thwart the purpose of Rule 3002.1 because if the Trustee had not filed his motion, the charges would likely have remained on the Gravels' account following the conclusion of their case, threatening their fresh start. The Trustee vigorously disputed PHH's representation that this Rule 3002.1(c) violation was a "one-time error," specifying that (i) PHH had sent out at least fifteen other mortgage statements that included post-petition fees and expenses without filing a single 3002.1(c) notice, (ii) PHH had been chastised by another bankruptcy court violating Rule 3002.1(c), see In re Owens, No. 12-40716, 2014 WL 184781 (Bankr. W.D.N.C. Jan. 1, 2014), (iii) PHH had assessed improper charges in other cases in this District, and (iv) this Court previously approved PHH's voluntary payment of a $9,000 sanction based on PHH"s repeated misapplication of mortgage payments and issuance of dozens of erroneous monthly mortgage statements to Mr. and Mrs. Gravel for over two years, see doc. # 49 (the "Sanctions Order").

The Trustee insisted that sanctions are also justified and necessary based on PHH's flagrant violation of Debtor Current Orders. He declared there is absolutely no excuse for PHH's issuance of the May 2016 Statement, reflecting charges that had been on the Debtors' statements for many months, after PHH affirmatively concurred the Debtors were current in all post-petition payments as of April 1, 2016.

### 2. *In re Beaulieu* (*Chapter 13 case # 11-10281*)

The procedural posture of this case is substantially similar to that of the Gravel case.

On May 5, 2016, the Court entered an order determining Mr. and Mrs. Beaulieu had cured all pre-petition mortgage defaults and were current on all post-petition mortgage payments to PHH (doc. # 82, "Debtors Current Order"). On May 25, 2016, the Creditor sent out a monthly statement that included old

---

[2] In its Opposition, the Creditor also asserted the Gravel Sanctions Motion should be denied because the Trustee failed to confer with PHH prior to his filing of that motion, as required under Vt. LBR 9013-1(b). Based upon the arguments the Trustee presented on this point at the July 27, 2016 hearing, the Court finds the Trustee had good cause not to contact PHH prior to filing his motion and denies PHH's request for relief on this basis.

charges (an NSF fee of $30 and a property inspection fee of $56.25) – charges for which it had never sent a Rule 3002.1(c) notice. On June 14, 2016, the Trustee filed a motion for contempt and sanctions (doc. # 90, the "Beaulieu Sanctions Motion") essentially articulating the same arguments and seeking the same relief as he did in the Gravel Sanctions Motion, with regard to both PHH's failure to comply with Rule 3002.1 and PHH's violation of the Debtors Current Order.

PHH filed its opposition to the Beaulieu Sanctions Motion on July 11, 2016 (doc. # 95), and the Trustee responded to that opposition on July 14, 2016 (doc. # 96). Both the Creditor's opposition and the Trustee's response in Beaulieu contained the same arguments as were made in the Gravel case.

The facts of this case are materially distinguishable from the Gravel case in only three respects: (i) the specific amount of post-petition fees the Creditor charged to the Debtors' account and the specific date those fees accrued, (ii) the Creditor's lack of response to the Trustee's motion for final determination before the Debtors Current Order was entered, and (iii) PHH was not previously sanctioned in this case.

*3. In re Knisley (Chapter 13 case # 12-10512)*

In contrast to the Gravel and Beaulieu cases, the Court did not enter a Debtors Current Order in the Knisley case. Therefore, the Trustee's motion for contempt and sanctions in this case focuses solely on the Creditor's failure to comply with Rule 3002.1 (doc. # 50, the "Knisley Sanctions Motion"). He alleges PHH issued a monthly mortgage statement on May 25, 2016 that included charges more than 180 days old ($246.50 in property inspection fees and $124.50 in late charges), without ever filing the required and corresponding Rule 3002.1(c) notices.

The Creditor filed an opposition to the Trustee's Motion (doc. # 51), and the Trustee responded to that opposition (doc. # 52), both of which set forth the same arguments made in the other two cases, with respect to the Rule 3002.1 defalcation.

*The Consolidated Hearing on the Trustee's Motions*

The parties appeared at a hearing on all three Sanctions Motions on July 27, 2016. At that hearing, PHH acknowledged it had included erroneous post-petition charges on statements that were sent without notice, declared it was working to change its internal system to prevent these errors from recurring, and protested that sanctions were neither warranted nor necessary. The Trustee reiterated the arguments from his Sanctions Motions, emphasized that PHH's automated issuance of post-petition mortgage statements – without notice of the alleged fees to the Debtors – was exactly the type of conduct Rule 3002.1 was enacted to prevent, and urged the Court to impose sanctions sufficient "to make violation of Rule 3002.1 an unprofitable business practice" and deter PHH from continued transgression of Debtor Current Orders (Gravel, doc. # 78, p. 6).

Based upon the parties' filings and their representations at the hearing, the Court determined sanctions were warranted and necessary. The Court offered both parties an opportunity to be heard on the appropriate amount of sanctions; neither party wished to specify a particular amount and left that issue to the Court's discretion.

## ISSUES PRESENTED

The first issue presented in these contested matters is whether PHH violated Rule 3002.1(c) in these three cases, and if so, the nature and appropriate amount of sanctions to be imposed under Rule 3002.1(i). The second issue is whether PHH violated orders of this Court, in the Gravel and Beaulieu cases, and if so, under what authority the Court can impose sanctions for that misconduct and the appropriate amount of such sanctions. The final issue is to whom any sanctions should be paid.

## JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered on June 22, 2012. The Court declares the dispute arising from the Trustee's motion for sanctions and the Creditor's objection to that motion is a core matter under 28 U.S.C. § 157(b)(2)(A), over which this Court has constitutional authority to enter a final judgment.

## DISCUSSION

### A. PHH'S FAILURE TO COMPLY WITH RULE 3002.1

Bankruptcy Rule 3002.1 (the "Rule") was promulgated in 2011, in response to a growing problem that had arisen in Chapter 13 cases throughout the country: debtors who had successfully completed their Chapter 13 plans, and paid all of their mortgage arrears and post-petition installment payments, would find themselves in renewed foreclosure proceedings due to undisclosed and unpaid post-petition charges and fees – a result clearly at odds with a debtor's right to a fresh start. To promote further transparency and more emphatically safeguard debtors' fresh starts, the Rule requires the holder of a claim secured by a Chapter 13 debtor's principal residence to file a detailed notice setting forth all post-petition fees, expenses, and charges it seeks to recover from the debtor:

> The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice itemizing all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence. The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred.

FED. R. BANKR. P. 3002.1(c). The Advisory Committee Note to the Rule articulates the purpose of Rule 3002.1 as follows:

> [The Rule] is added to aid in the implementation of § 1322 (b)(5), which permits a chapter 13 debtor to cure a default and maintain payments on a home mortgage over the course of the debtor's plan. … In order to be able to fulfill the obligations of §

5

> 1322(b)(5), a debtor and the trustee have to be informed of the exact amount needed to cure any pre-petition arrearage, <u>see</u> Rule 3001(c)(2), and the amount of the post-petition payment obligations. If the latter amount changes over time, due to the adjustment of the interest rate, escrow account adjustments, or the assessment of fees, expenses, or other charges, notice of any change in payment amount needs to be conveyed to the debtor and trustee. Timely notice of these changes will permit the debtor or trustee to challenge the validity of any such charges, if appropriate, and to adjust post-petition mortgage payments to cover any undisputed claimed adjustment.

FED. R. BANKR. P. 3002.1 Advisory Committee Note (2011).

The importance of the obligations mandated by this Rule is underscored by inclusion of a penalty for violations. When a party fails to comply with Rule 3002.1(c), Rule 3002.1(i) explicitly empowers a court to impose sanctions. It authorizes bankruptcy courts to preclude the mortgage creditor from presenting information it failed to disclose in accordance with the Rule, and to "award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure." FED. R. BANKR. P. 3002.1(i). The corresponding Advisory Committee Note reinforces the court's authority to punish violations of the Rule, specifying "sanctions may be imposed if the holder of a claim fails to provide any of the information required under subdivision (c)." <u>See</u> FED. R. BANKR. P. 3002.1 Advisory Committee Note (2011).

In addition to this express authority to impose sanctions for Rule 3002.1(c) violations under Rule 3002.1(i), bankruptcy courts have broad authority to impose sanctions under § 105 of the Bankruptcy Code.[3] That statutory provision empowers courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]… [and to] sua sponte, tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). <u>See also</u> <u>Law v. Siegel</u>, 134 S. Ct. 1188, 1194 (2014); <u>Marrama v. Citizens Bank of Massachusetts</u>, 549 U.S. 365, 383 (2007); <u>In re Aquatic Dev. Grp., Inc.</u>, 352 F.3d 671, 680 (2d Cir. 2003). The Second Circuit has "repeatedly emphasized the importance of the bankruptcy court's equitable power" and has instructed that § 105(a) should be "construed liberally to enjoin [actions] that might impede the reorganization process." <u>In re Momentum Mfg. Corp.</u>, 25 F.3d 1132, 1136 (2d Cir. 1994). A bankruptcy court "may sift the circumstances surrounding any claim in order to ascertain that injustice or unfairness is not accomplished in the administration of the debtor's estate, and in so doing it may adopt that remedy which it deems most appropriate under the circumstances," <u>id.</u> (quoting <u>In re Stirling Homex Corp.</u>, 591 F.2d 148, 155-56 (2d Cir. 1978)), and must explain its rationale for the imposition of sanctions with care, specificity, and attention to the sources of its power, <u>In re Kalikow</u>, 602 F.3d 82, 96 (2d Cir. 2010).

---

[3] All statutory citations refer to Title 11 United States Code (the "Bankruptcy Code"), unless otherwise indicated.

Neither party has cited, and this Court has not found, any case in which a court imposed sanctions under Rule 3002.1(i) or explained how sanctions arising under that rule should be computed. However, there are several cases which shed light on the various factors courts may consider in determining the amount of sanctions to be imposed when a mortgage creditor repeatedly sends Chapter 13 debtors inaccurate post-petition account statements, or assesses improper post-petition charges, or claims post-petition charges without notice to the debtors, trustee or court.

For example, in In re Jones, a case that pre-dated Rule 3002.1, the bankruptcy court found the creditor, Wells Fargo, had willfully violated the automatic stay when it assessed and paid itself undisclosed charges (for attorney fees, property inspections, and sheriff's commissions) from estate property, following confirmation of the debtor's Chapter 13 plan. In re Jones, 366 B.R. 584 (Bankr. E.D. La. Apr. 13, 2007). There, the creditor failed to notify the debtor, the trustee, or the court that any of these post-petition charges were added to the debtor's account, failed to seek court approval to pay the charges, and paid itself for the charges out of estate funds delivered to it for payment of other components of its debt. When the matter first came before the court, Judge Magner declared the creditor's actions to be unconscionable:

> Bankruptcy courts cannot function if secured lenders are allowed to assess postpetition fees without disclosure…It is unconscionable that a lender would represent a certain debt was due, allow debtor to base his repayment plan on that sum, and then arbitrarily and without notice change the amounts owed without disclosure or amendment to its proof of claim.

Id. at 603. After a hearing at which Wells Fargo offered to implement improved accounting practices to avoid being sanctioned, the court observed that the "imposition of a fine or penalty may be the only means of deterring a recalcitrant litigant," but concluded in that particular case "[the court was] convinced that [it had] secured [the creditor's] attention and that [the creditor's] offer to amend its practices [was] real." In re Jones, No. 06-1093, 2007 WL 2480494, at *7 (Bankr. E.D. La. Aug. 29, 2007). Therefore, the court allowed Wells Fargo the opportunity to make changes to its account processing systems and declined to impose sanctions at that time. Id. However, the creditor failed to fulfill its promise to the court, and took no action to correct its mishandling of debtor mortgage accounts. The Court found that because Wells Fargo failed to take satisfactory corrective action, showed "no inclination to change its conduct," and had previously been involved in litigation – and sanctioned for – the same misconduct in other jurisdictions, sanctions were warranted, inter alia, for Wells Fargo's assessment of improper fees and charging of those fees without notice to the debtor, trustee or court. See In re Jones, No. 06-1093,

7

2012 WL 1155715, at *9-10 (Bankr. E.D. La. Apr. 5, 2012). The court imposed a sanction in the amount of $3,171,154. [4] Id.

Even though the source of legal authority for the sanctions at issue in Jones was § 362, and the decision was issued prior to the promulgation of Rule 3002.1, its rationale for imposing sanctions is applicable to the instant cases for several reasons. First, the creditors in both Jones and the instant cases failed to notify the debtor and trustee of post-petition fees and charges assessed to the debtors' account. Second, the explanation in Jones for why the failure to disclose post-petition charges warrants sanctions is entirely aligned with the history and purpose of Rule 3002.1. Third, the mortgage creditor's repeated failure to rectify its non-compliance with applicable laws and rules, despite multiple court warnings and its own promises to do so, in Jones, is mirrored in the instant cases.

Since Rule 3002.1(i) is silent on the question of what constitutes "appropriate relief" for violation of Rule 3002.1(c), this Court looks to the rationale applied in the Jones decision, and relies upon the equitable considerations invoked in connection with use of § 105, see In re Momentum Mfg. Corp., 25 F.3d at 1136, in determining the proper amount of sanctions to impose on PHH for its Rule 3002.1(c) violation. This persuades the Court to conclude that the most salient factors here are (1) whether PHH had notice of the need to comply with Rule 3002.1(c); (2) whether this is the first time PHH failed to fulfill its duties under Rule 3002.1(c) and/ or has previously been sanctioned for similar misconduct; and (3) whether PHH was given an opportunity to rectify processes leading to and/or causing the defalcations, and if so, whether it fulfilled its commitment to do so.

With respect to the first of these factors, the Court finds PHH had adequate notice of the specific need to comply with Rule 3002.1(c). In In re Owens, the bankruptcy court specifically found PHH violated Rule 3002.1(c) when it sent the debtors statements which included post-petition fees more than 180 days old without filing or serving the required 3002.1(c) notice. No. 12-40716, 2014 WL 184781 (Bankr. W.D.N.C. Jan. 1, 2014). There, the debtors had filed a motion asking the court to enforce Rule 3002.1(c) by disallowing the post-petition fees, and to grant relief under Rule 3002.1(i) by awarding attorney's fees. PHH presented three counterarguments: (1) it was not required to comply with Rule 3002.1(c) since it did not intend to recover the fees at the present time, (2) it sent the statements to comply with a state statute so it could recover the fees in the future, and (3) the debtors could rely on Rule 3002.1(f) to prohibit PHH from collecting fees if the debtors completed their plan payments and the trustee filed a motion to deem them current. The Owens court rejected all of PHH's arguments and held

---

[4] The Court recognizes that the creditor in Jones also paid itself undisclosed fees and charges from the estate property, which is much more egregious misconduct than a failure to file notices of those fees and charges, and therefore would not find cause to impose a sanction of the same magnitude here. This case is instructive, however, with respect to the factors the court found salient in assessing whether sanctions were warranted, as is more fully described below.

that PHH was required to comply with Rule 3002.1(c), regardless of if and when it intended to actually recover the fees: "[Rule 3002.1(c)] makes no mention of the timing of collections, only that a particular form of notice is required to be filed and served in a particular way when a creditor wants to assert a recoverable fee." Id. at *4. However, this decision was rendered only a couple of years after the effective date of Rule 3002.1, and the Owens court declined to sanction PHH under 3002.1(i), ruling that this violation of Rule 3002.1(c) was a "matter of first impression." It did, though, unequivocally warn PHH that "it [might] consider awarding relief as against [PHH] under Rule 3002.1(i) should it come up in the future." Id.

PHH has not claimed it lacked notice of its obligation to comply with Rule 3002.1(c) in these cases and the Court finds it unquestionably did have notice, generally and by virtue of the Owens warning. Therefore, consideration of the circumstances surrounding this factor weighs in favor of imposing a sanction on PHH.

As to the second factor, the Court finds this is not the first instance where PHH has failed to comply with Rule 3002.1(c) or managed mortgage accounts in dereliction of its Bankruptcy Rule duties. As noted above, in January of 2014, the Owens court found PHH had failed to comply with Rule 3002.1(c). Two months later, in March of 2014, PHH was sanctioned $9,000 in the Gravel case, for conduct which contravened Rule 3002.1(c). At that time, the Trustee alleged PHH had been repeatedly, over a period of 2 ½ years, misapplying mortgage payments and sending erroneous statements showing Mr. and Mrs. Gravel were delinquent on their post-petition payments – when in fact they were current. Frustrated with PHH's "persistent non-compliance" which he perceived to be "plaguing [the Gravels]" and PHH's complete lack of response to his repeated attempts to resolve the problem outside of court, the Trustee filed a motion to compel PHH to correct its records, properly apply the post-petition payments, and expunge any claim that the Gravels were delinquent (Gravel, doc. #43, the "First Sanctions Motion"). In response to the First Sanctions Motion, PHH admitted its erroneous processing and misapplication of the Debtors' post-petition payments (Gravel, doc. # 44), and entered into a settlement under which it would pay Mr. and Mrs. Gravel $9,000 in sanctions. Although the Trustee did not specifically allege PHH had violated Rule 3002.1 at that time, PHH's issuance of statements with incorrect post-petition fees without notice, in 2014, is the same type of misconduct PHH committed in the instant cases. PHH has conceded it sent out mortgage statements to the Debtors in all three of the instant cases showing erroneous post-petition fees without filing the required Rule 3002.1(c) notices. Against the backdrop of the Owens decision and the previous sanction in the Gravel case, PHH's failure to comply with Rule 3002.1(c) is neither a "one-time error" nor a first offense in this District. Thus, this factor also tips the scale in favor of imposing sanctions on PHH.

9

With regard to the third factor, the Court finds PHH was given an opportunity to correct the underlying processes which apparently caused the Rule 3002.1(c) violations now before this Court. In approving the $9,000 sanction as an appropriate settlement of the Trustee's First Sanctions Motion in the Gravel case, the Court relied on PHH's representation that it had changed its accounting practices. There, PHH avowed:

> [PHH] has made the corrections to Debtors' account so that the post-petition payments are current at this time. As well, [PHH] has implemented a manual process to provide quality control and oversight over its automated payment processing of Vermont mortgage loans in Chapter 13. This has been done in an attempt to assure proper application of payments for this and all other Vermont loans serviced by [PHH] and which are in Chapter 13…[A]ny sanctions issued by this Court should be progressive in nature. It is believed that there have been no prior requests for sanctions against [PHH] in this Court. [It] respectfully requests that this Court take into consideration in determining if sanctions are appropriate and, if so, the amount of any sanction. As stated above, **[PHH] has implemented remedial efforts in order to prevent future accounting issues. [It] requests an opportunity to prove the efficiency of such efforts and that this opportunity be allowed before the imposition of severe sanctions.**

Doc. # 44 (emphasis added). This Court granted PHH's entreaty for an opportunity to "prove the efficiency of its [remedial] efforts." However, the record in the three instant cases categorically demonstrates that those remedial efforts failed. Following entry of the Sanctions Order, PHH sent 25 monthly mortgage statements in each case (for a total of 75 statements); all of them included the same post-petition fees PHH now admits were mistakenly included in the May Statements.[5] PHH also admitted it did not file any Rule 3002.1(c) notices with respect to those fees. Moreover, the fact that PHH erroneously sent "an electronically-generated monthly mortgage statement" in all three cases (Gravel, doc. # 77, ¶ 1; Beaulieu, doc. # 95, ¶ 1; Knisley, doc. # 51, ¶ 1) suggests that the manual process PHH promised to implement was either woefully ineffective or never implemented. Since the Court previously afforded PHH an opportunity to bring its practices in line with the mandates of Rule 3002.1, and it breached its pledge to do so, it appears the time has come for "the imposition of severe sanctions."[6]

While neither the Trustee nor the Creditor has availed themselves of the opportunity to be heard on the extent of sanctions, it is evident in light of the factors set out above that $9,000 was insufficient to deter PHH from continuing to violate Rule 3002.1(c). It has been more than two years since entry of the

---

[5] In each case, the Trustee attached several mortgage statements to his papers showing the post-petition fees accumulated over the course of several years and were never removed from the Debtors' accounts. He states that "[t]hese fees remained on the monthly statements up to, and including" the May 2016 Statements (Gravel, doc. # 78, ¶ 4; Beaulieu, doc. # 96, ¶ 4; Knisley, doc. # 52, ¶ 4). The Court calculates the number of months from the date of the Sanctions Order to the recently sent May Statements to arrive at the number of monthly mortgage statements that not only continued to include these erroneous fees but also were sent without the required and corresponding 3002.1(c) notices.

[6] PHH's prayer for an opportunity to prove the efficiency of remedial accounting systems it would implement "before the imposition of severe sanctions" (Gravel, doc. # 44), signals its awareness that failure to rectify its systems could indeed come with significant penalties.

10

March 2014 Sanctions Order in Gravel, PHH has continued to bill post-petition fees without filing the corresponding and required Rule 3002.1(c) notices during that period in all three cases, and PHH has failed to fulfill its March 2014 pledge to correct its mortgage accounting practices. Based upon these findings, in the exercise of its § 105 powers and pursuant to Rule 3002.1(i), the Court concludes a sanction amount computed on the number of months this misconduct persisted after PHH assured the Court it had rectified the problem is warranted, reasonable, and well-founded. It will therefore impose a sanction in each of these three cases in the amount of $1,000 per month for the 25 months that have passed since approval of the settlement in Gravel, during which PHH improperly assessed post-petition fees and failed to file the required Rule 3002.1(c) notices. This sanctions amount reflects the serious nature of PHH's persistent and reckless violations of Rule 3002.1(c) and is intended to motivate PHH to comply with its Rule 3002.1 obligations going forward.

### B. PHH'S VIOLATION OF A COURT ORDER

In addition to seeking sanctions based on PHH's failure to comply with Rule 3002.1, the Trustee's Motions in the Gravel and Beaulieu cases seek sanctions based on PHH's violations of this Court's orders. Specifically, the Trustee asks the Court to make a finding of contempt for PHH's violation of the Debtors Current Orders in these two cases, and impose civil contempt sanctions to deter it from violating this Court's orders in the future (Gravel, doc. # 75, p. 3; Beaulieu # 90, p. 3).

In response, PHH asserts it has not violated any court order (Gravel, doc. # 77, ¶ 25). However, as the Trustee correctly points out in his reply, the record clearly shows otherwise. The Debtors Current Orders expressly declared the Debtors were current in all payments and unequivocally prohibited PHH from asserting otherwise:

> [T]he debtors, by their payments through the Office of the Chapter 13 Trustee, have made all payments due during the pendency of this case…**including all monthly payments and any other charges or amounts due under their mortgage with [PHH Mortgage].**
> …
> **[T]he mortgagee shall be precluded from disputing that the debtors are current (as set forth herein) in any other proceeding.**

Gravel, doc. # 74 (emphasis added). In direct contradiction to these terms, after entry of these Orders, PHH sent mortgage statements claiming miscellaneous post-petition fees were still due. Therefore, the Court finds PHH violated the Debtors Current Orders in the Gravel and Beaulieu cases.

The Trustee asks the Court to impose civil contempt sanctions for this violation, but the particular goals he seeks to accomplish are beyond the scope of civil contempt sanctions. It is well-settled that the purpose of a civil contempt sanction is "either to coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past

11

noncompliance." New York State Nat. Org. for Women v. Terry, 886. F.2d 1339, 1352 (2d Cir. 1989); In re 1990's Caterers Ltd., 531 B.R. 309, 319 (Bankr. E.D.N.Y. 2015); Livecchi v. Gordon, 513 B.R. 209, 214 (W.D.N.Y. 2014). Here, the Trustee does not seek to achieve either goal. Coercive sanctions are inapposite because PHH has already complied, albeit belatedly, with the Debtors Current Orders by waiving the post-petition fees and removing them from the Debtors' accounts.[7] See In re Stockbridge Funding Corp., 158 B.R. 914, 918 (S.D.N.Y. 1993) (since coercive sanctions afford a contemnor an opportunity to purge his contempt, a court cannot impose a coercive sanction after full compliance with a court's orders because there is no future compliance to be coerced). Likewise, the Court cannot grant compensatory sanctions here because the Trustee has acknowledged that his decision not to pay the fees in question protected the Debtors from incurring the additional charges and the Trustee did not incur attorney's fees (Gravel, doc. # 78, p. 6).

However, the inquiry does not end there. The record strongly supports the imposition of sanctions against PHH, for its violation of this Court's orders, under both the Court's inherent powers and § 105 of the Bankruptcy Code.

In contrast to civil contempt sanctions, which are appropriate only for coercive and compensatory purposes, sanctions may be imposed pursuant to a court's inherent authority to punish and/or deter offending conduct.[8] As federal courts, bankruptcy courts possess inherent authority to impose sanctions specifically for violations of court orders. See Int'l Union, UMWA v. Bagwell, 512 U.S. 821, 831 (1994); see also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258 (1975). This inherent power to sanction rests on the fact that courts are "vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates…to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). While these inherent powers must be exercised with restraint and discretion, a court may "safely rely on its inherent power" to impose sanctions where, "in the informed discretion of

---

[7] PHH issued June 2016 mortgage statements in each case which showed the Debtors owed no sums to the Creditor and were current on all pre- and post-petition payment obligations.

[8] See In re Charbono, 790 F.3d 80 (1st Cir. 2015) (bankruptcy court has inherent power to impose punitive, non-contempt sanctions for violation of a court order even when there is belated compliance with that order); In re Ashley, 539 B.R. 198 (Bankr. D.N.H. 2015) (creditor's failure to comply with confirmation order warranted $13,000 sanction to "send a message" to that creditor as well as others that they must timely comply with their obligations under a confirmed Chapter 13 plan); In re Campora, No. 14-70330, 2014 WL 4980027, at *9 (Bankr. E.D.N.Y. Oct. 6, 2014) (debtor's repeated attempts to mislead the court warranted sanctions of $10,000, pursuant to its inherent authority, to punish and deter the offending conduct); In re Ambotiene, 316 B.R. 25, 35 (Bankr. E.D.N.Y. 2004) (bankruptcy courts have "inherent power to maintain order in the courts [and] punish inappropriate behavior"); In re Hutter, 207 B.R. 981, 988 (Bankr. D. Conn. 1997), aff'd, No. 3:98CV11562001, 2001 WL 34778750 (D. Conn. Apr. 4, 2001) (party's defiance of court's discovery orders and corresponding abuse of bankruptcy process warranted sanctions of $2,500 to "punis[h] the wrongdoer" and "dete[r] others from similarly burdening the court").

the court, neither the Statute nor the Rules are up to the task," see id. at 50, as long as that action is not prohibited by the Bankruptcy Code, see Law v. Siegel, 134 S. Ct. at 1191.

In the Second Circuit, inherent power sanctions ordinarily require a clear showing of bad faith on the part of the party to be sanctioned. See Wolters Kluwer Fin. Servs., Inc. v. Scivantage, 564 F.3d 110, 113 (2d Cir. 2009) (inherent power sanctions are appropriate only if there is clear evidence that the conduct at issue is entirely without color and motivated by improper purposes). However, the Second Circuit recognizes an exception to this general rule. In United States v. Seltzer, the Circuit Court determined that there are actually two "breed[s]" of inherent power sanctions, one that requires a finding of bad faith and one that does not. 227 F.3d 36, 42 (2d Cir. 2000). The Seltzer court explained that a finding of bad faith is only required when "a court imposes attorney's fees as a sanction, or when the court sanctions an attorney for conduct that is integrally related to the attorney's role as an advocate for his or her client," to ensure the fear of attorney's fees does not deter those with colorable claims from pursuing them. Id. at 40. In contrast, it expounded that in situations where the court seeks to

> sanction misconduct by an attorney that involves that attorney's **violation of a court order** or other misconduct that is not undertaken for the client's benefit, the [court] need not find bad faith before imposing a sanction under its inherent power.

Id. at 42 (emphasis added). This exception is not limited to attorneys since a court may exercise its inherent authority to impose sanctions on parties as well. In re Ormand Beach Associates L.P., 278 B.R. 307, 312 (D. Conn. 2002), aff'd sub nom. In re Ormond Beach Associates Ltd. P'ship, 65 F. App'x 340 (2d Cir. 2003).

In addition to bankruptcy courts' inherent power to sanction a party who violates a court order, §105(a) gives bankruptcy courts the authority to

> issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]… [and to] **sua sponte, tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.**

11 U.S.C. § 105(a) (emphasis added); see MA Salazar v. Incorporated Village of Atlantic Beach, 499 B.R. 268, 273 (E.D.N.Y. 2013).

Bankruptcy courts have extensive discretion under § 105 to determine what amount of sanctions is appropriate and reasonable. See Chambers v. NASCO, Inc., 501 U.S. at 44-45; In re Schuessler, 386 B.R. 458, 491-92 (Bankr. S.D.N.Y. 2008); see also In re Haemmerle, 529 B.R. 17, 30 (Bankr. E.D.N.Y. 2015). Courts must give individualized consideration to the particular circumstances of the case, balance a myriad of factors, and very intentionally calculate the amount of the sanction to ensure it is no more than is reasonably necessary to deter the culpable conduct. See In re Charbono, 709 F.3d at 89; Vasbinder v. Scott, 976 F.2d 118, 121 (2d Cir. 1992) (citing Aldrich v. Thomson McKinnon Sec., Inc., 756 F.2d 243,

13

249 (2d Cir. 1985)). There is no formula for this computation and no defined checklist of factors to include in the analysis. This Court has considered the constellation of variables other courts have relied upon to determine which factors are of most import in this case.[9] Based on PHH's conduct in violation of this Court's orders – orders aimed at ensuring accounting accuracy in Chapter 13 cases, full disclosure of post-petition mortgage charges, and protection of Chapter 13 debtors' fresh starts – it discerns the following factors to be most probative for determining the appropriate sanction: (1) whether PHH had adequate notice of the Debtor Current Orders, (2) whether PHH has engaged in a pattern of the offending conduct, (3) whether PHH was previously admonished or sanctioned for similar conduct, (4) PHH's level of sophistication and available financial resources, and (5) other pertinent facts or circumstances that show PHH's disregard for court orders.

Here, based upon the Court's finding that PHH violated the Debtors Current Orders, a sanction imposed under this Court's inherent power and § 105 is warranted.[10] First and foremost, in both cases, PHH had notice of the Debtors Current Orders upon the Trustee's filing of Motions for Determination of Final Cure and Mortgage Payment (Gravel, doc. # 70; Beaulieu, doc. # 80). In the Beaulieu case, the Creditor received electronic notice of that motion and did not object by the deadline set forth in the notice. In the Gravel case, PHH not only received electronic notice, but filed a response affirmatively concurring with the Trustee's conclusion: "Creditor states that the debtor(s) are current with all post-petition payments consistent with § 1322(b)(5) of the Bankruptcy Code, including all fees, charges, expenses, escrow, and costs" (Gravel, doc. # 72). Based upon PHH's consent / lack of objection to the Trustee's motions, after proper notice, in both cases, the Court entered the Debtors Current Orders. Thereafter, upon the filing of the Trustee's Sanctions Motions, PHH filed a detailed opposition and presented arguments at the July 27th hearing. At the hearing, PHH acknowledged its error, and upon the Court's inquiry with

---

[9] This constellation of factors can be observed in the following cases: In re Charbono, 790 F.3d at 90 ($100 inherent power sanction imposed on debtor was only half of what the movant had requested and the reduction was based in part on the fact that debtor had cash-flow problems); In re Haemmerle, 529 B.R. at 31 (punitive sanction on large mortgage creditor was based on fact that creditor knowingly made 138 separate attempts to collect the debt, in violation of debtor's discharge injunction and could easily afford the $69,500 punitive sanction plus the award of all the debtor's attorney's fees); In re Campora, No. 147-70330, 2014 WL 4980027, at *9 ($10,000 inherent power sanction was imposed on debtor who misled the court, showed repeated lack of respect for the bankruptcy process, and had sufficient net monthly income to pay this over a short period of time); In re Paige, 365 B.R. 632 (Bankr. N.D. Tex. 2007) ($80,000 inherent power sanction was imposed on debtor after considering the substantial annual income the debtor earned as a doctor, the debtor's level of sophistication, and likelihood this sum would be sufficient to deter similar conduct).

[10] While there is no requirement to make a bad faith finding, PHH's conduct cannot realistically be attributed to an innocent mistake. PHH had knowledge of the Debtors Current Order, violated it in at least the two instant cases by including post-petition fees that should never have appeared in the first place, only corrected the statements after the Trustee filed a motion for sanctions, and then asserted it did not violate a court order at all. Taken together, particularly in the context of prior court warnings, these actions raise serious concerns about whether PHH is making a good faith effort to comply with Rule 3002.1 and heed the directives of court orders declaring debtors current.

14

regard to the amount of sanctions, PHH deferred to the Court's discretion.[11] Therefore, the Court finds that PHH had ample notice of this Court's orders declaring the Debtors to be current, was given an opportunity to be heard with respect to the imposition of sanctions for its violation of those orders, and nonetheless issued statements that conspicuously violated those orders.

Second, PHH's instant violation of the Debtors Current Orders is not the first time PHH has violated a court declaration that the Debtors are current in their post-petition payments. The Sanctions Order, entered on March 31, 2014, in the Gravel case, not only sanctioned PHH for sending the Debtors inaccurate mortgage statements, but also unambiguously declared the debtors were current as of that date:

> [The Trustee] having filed a Motion to Compel [PHH Mortgage] to correct misapplied mortgage payments disbursed to it by the trustee in this case and for sanctions arising from its failure during this case to correctly apply such payments, the trustee and PHH, by filing their consent to this order, have stipulated and agreed to the following:
> (1) Subsequent to the filing of the motion, PHH has taken steps to re-apply the misapplied mortgage payments, paid to it by the trustee, and **is now showing the debtor's mortgage payments, post-petition, as current**[.]

Doc. # 49 (emphasis added). Thus, the erroneous post-petition property inspection fees of $258.75 PHH claimed on the March 31, 2014 statement should have been permanently deleted from the Debtors' account. Instead, that exact amount also appears on the May 2016 Statement. This implies that, contrary to PHH's representation to this Court and the terms of the Sanctions Order, the improper inspection charge was never removed. Thus, not only did PHH violate the instant Debtors Current Orders, but it also violated the Sanctions Order in Gravel. This persistence in assessing the charge after entry of the Sanctions Order manifests a lack of respect for this Court's orders, an abuse of the bankruptcy process, a disregard for the imperatives of Chapter 13 and Rule 3002.1, and a serious threat to Debtors' rights to a true fresh start.  These are exactly the types of derelictions § 105 is intended to redress, see Stirling Homex Corp., 591 F.2d at 155-56.

Third, it is evident that the $9,000 sanction PHH paid in 2014 was not enough to deter PHH from continuing to issue inaccurate mortgage accounts statements to Chapter 13 debtors – the very crux of its violation of the Debtors Current Orders here. When the $9,000 sanction was imposed, PHH indicated that sum was a reasonable sanction for its improper misapplication of mortgage payments and its issuance of inaccurate monthly mortgage statements to Mr. and Mrs. Gravel, and underscored its commitment to immediately institute a "manual process to provide quality control" in all Chapter 13 cases in this District to "prevent future accounting issues" (Gravel, doc. # 44). The Court allowed PHH the chance to prove the

---

[11] Though not directly germane to the issue of PHH's notice of the Debtor Current Orders, it is relevant that PHH had other notice of its risk of sanctions: This Court alerted PHH in the Gravel case, in March 2014, that it could be sanctioned (again) if it continued to send inaccurate post-petition mortgage statements to debtors and engage in careless conduct, see Sanctions Order, which essentially echoed exhortation the Owens court delivered to PHH, in January 2014.

15

efficacy of these remedial efforts and specifically stated it hoped the $9,000 sanction would be a sufficient deterrent to permanently prevent future misconduct of this type.[12] In retrospect, it is clear that it was not.

Finally, the Court must take into account that PHH is a sophisticated commercial lender and an entity of substantial financial means. According to the public statements on its website, PHH is a top-ten originator and servicer of residential mortgages in the United States, boasting "approximately $41 billion in mortgage financing and maintained an average servicing portfolio of approximately 1.1 million loans" in 2015 alone.[13] PHH has the expertise and experience to be charged with knowledge of the Bankruptcy Rules, of its duty to comply with court orders, and of its obligation to fulfill the commitments it makes to courts and debtors.

After careful consideration of all of these factors, and mindful of the need to limit the magnitude of the sanction to the amount necessary to deter future misconduct, the Court imposes a $100,000 sanction in the Beaulieu case. The Court believes this amount is warranted, reasonable, and necessary to communicate to PHH the gravity of its violation of this Court's Debtor Current Order in this case, to punish the violation, and to deter PHH from violating court orders in the future.[14]

While the underlying violation of the Debtors Current Order is the same in both Gravel and Beaulieu, the factual distinctions between those cases compel the imposition of a higher sanction in Gravel.  In that case, PHH's misconduct was more egregious because (i) prior to the Sanctions Order, PHH had sent the Debtors blatantly incorrect mortgage statements for 2 ½ years and ignored the Trustee's repeated demands to correct those statements; (ii) it was only after the Trustee filed a motion for sanctions that PHH admitted the statements were incorrect; (iii) in lieu of paying the $12,000 sanction the Trustee had sought in 2014, PHH paid a lower sanction of $9,000 and promised to promptly correct the flaws in its procedures for handling debtor mortgage accounts; (iv) upon the Trustee's motion for a determination that Mr. and Mrs. Gravel were current, PHH filed a document in this Court affirming the Debtors were current; and (v) after entry of that Debtors Current Order,  PHH sent a statement claiming the Debtors owed post-petition fees dating back to a time prior to entry of that order. For these reasons, this Court believes a $200,000 sanction is warranted, reasonable, and necessary for PHH's violation of the Debtor Current Order in the Gravel case, to punish PHH for its violations of this Court's orders, and to deter it from violating them in the future.

---

[12] Upon PHH's plea that sanctions be progressive in nature and that the Court be lenient for this first-time offense, at the hearing held on March 21, 2014, the Court responded: "My theory is if a sanction is imposed, I shouldn't ever see that party again. I don't want to impose sanctions on the expectation that I'm going to impose a low sanction today, and the next time you do it, you'll get a higher sanction. That's contrary to how sanctions should work. They should be effective and enough to stop the conduct entirely."

[13] *About Us, Who We Are*, PHH MORTGAGE (Sept. 12, 2016, 3:20 P.M.), https://www.phhmortgage.com/13571/about-us/who-we-are.html

[14] As the bankruptcy court observed in In re Ramos, No. 10-23019, 2013 WL 5461859 (Bankr. S.D.N.Y. Oct. 1, 2013), only time will tell whether this sanction is in fact adequate to change the Creditor's behavior.

### C. PHH Should Pay the Sanction to a Non-Profit Legal Services Entity

The Debtors in these cases might well have found themselves confronted with unexpected charges and possible suit by PHH, after their bankruptcy cases were concluded, if the Trustee had not been zealous in his efforts to compel PHH to remove the incorrect charges from the Debtors' monthly mortgage statements. Without the Trustee's vigilance and his filing of the Sanctions Motions, the Debtors' fresh start might have been jeopardized – just as the drafters of Rule 3002.1 had warned. The Court levies a substantial sanction on PHH in these cases to deter PHH from continuing to violate Debtor Current Orders, even though the Debtors suffered no economic injury. Moreover, while the Court is persuaded that any lesser sanction would be insufficient to deter PHH from engaging in this type of misconduct in the future, payment of the sanction to either the Debtors or the Trustee would be an unjustified windfall for those parties. Under these circumstances, where the sanction is absolutely necessary to punish serious misconduct, but the opposing party did not suffer financial harm, it is not uncommon for bankruptcy courts to direct the offending party to pay the sanction to a third party non-profit legal organization or a volunteer lawyer project. See In re Whitehill, 514 B.R. 687, 693 (Bankr. M.D. Fla. 2014) (imposing sanctions payable to the Bankruptcy Legal Education Series); In re Ulmer, 363 B.R. 777, 786 (Bankr. D. S.C. 2007) (directing law firm to pay sanction to South Carolina Pro Bono Association or the South Carolina Centers for Equal Justice). This Court did exactly that last year in In re Miller, No. 14-10301, slip op. at 4 (Bankr. D. Vt. July 24, 2015), and finds good cause to do so here.

As in Miller, the Court believes the best way to protect consumer debtors who cannot afford to dispute and litigate the assessment of improper post-petition charges – and thus are at risk of having their fresh starts diluted – is to direct PHH to pay this sanction to Legal Services Law Line of Vermont. This way, PHH suffers a substantial financial penalty purposefully formulated to motivate PHH to bring its procedures into compliance with both Rule 3002.1 and Debtor Current Orders, neither the Debtors nor the Trustee is unjustly enriched, and Vermont's lead provider of pro bono legal services in bankruptcy cases receives funds it can use to assist indigent consumer debtor mortgagors in this District.

### CONCLUSION

For the reasons set forth above, the Court makes the following findings. First, the Court finds that PHH Mortgage Corporation failed to comply with Bankruptcy Rule 3002.1 in all three of these cases, and that misconduct warrants the disallowance of all post-petition charges and an award of sanctions, under Rule 3002.1(i) and § 105. Second, the Court finds PHH Mortgage Corporation violated this Court's orders in the Gravel and Beaulieu cases, and that misconduct warrants the imposition of additional sanctions, under this Court's inherent powers and § 105. Third, the Court finds it is most equitable for PHH Mortgage Corporation to pay the sanctions to a nonprofit legal services entity.

The Court does not impose these sanctions lightly. Rather, it has found cause to impose the type and amount of sanctions described in this memorandum based upon the particular party, conduct, and circumstances involved. Moreover, the Court deliberately levies this substantial penalty on PHH to convey a clear message to PHH, and other mortgage creditors, that they may not violate court orders with impunity and will suffer significant monetary sanctions if they conduct their mortgage accounting operations in a manner that fails to fully comply with Rule 3002.1, violates court orders, or threatens the fresh start of Chapter 13 debtors.

Accordingly, the Court (1) disallows the post-petition charges PHH assessed in each of these three cases; (2) imposes a $25,000 sanction for PHH's repeated failure to file and serve the required notices under Rule 3002.1(c) in each of these three cases; (3) imposes a $100,000 sanction for PHH's violation of the Order Declaring the Debtors Current in the Beaulieu case and a $200,000 sanction for PHH's violation of the Order Declaring the Debtors Current in the Gravel case; and (4) directs PHH to pay the sanction, totaling $375,000, to Legal Services Law Line of Vermont, within fourteen (14) days.

This constitutes the Court's findings of fact and conclusions of law.

*[signature]*

September 12, 2016
Burlington, Vermont

Colleen A. Brown
United States Bankruptcy Judge