UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

| | |
|---|---|
| **In re:**<br>**Nicholas and Amanda Gravel,**<br>Debtors. | **Chapter 13 Case**<br>**# 11-10112** |
| **In re:**<br>**Allen and Laurie Beaulieu,**<br>Debtors. | **Chapter 13 Case**<br>**# 11-10281** |
| **In re:**<br>**Matthew and Emilie Knisley,**<br>Debtors. | **Chapter 13 Case**<br>**# 12-10512** |

**Chapter 13 Standing Trustee Jan M. Sensenich's <u>Reply</u> in Support of His Motion for:
(1) Reimposition of Substantial Punitive Non-Contempt Sanctions Against PHH;
(2) Certification Under 28 U.S.C. § 158(d)(2); & (3) Issuance of a Stay Pending Appeal**

INTRODUCTION

One of the most important "sanction[s] that lies within a court's armamentarium" is a substantial "punitive *non-contempt* sanction[]." *In re Charbono,* 790 F.3d 80, 85 (1st Cir. 2015) (emphasis in original). In the above-captioned bankruptcy cases, Chapter 13 Standing Trustee Jan M. Sensenich ("Trustee") established that PHH Mortgage Corporation ("PHH") engaged in flagrant misconduct warranting this kind of sanction. (*See Gravel* Bankr. Dkt. 82 at 5–16.) This Court agreed. (*See id.*) The District Court ruled, however, that this Court has no power to impose a substantial punitive non-contempt sanction—even when such a sanction is fully warranted. (*See Gravel* Dist. Ct. Dkt. 11 at 14–15 (rejecting *Charbono*).)

The District Court has thus deprived this Court of its ability to impose a "punishment" that "fit[s] the crime" here—a punishment ensuring that "those who fail to follow the rules face consequences." *ECIMOS, LLC v. Nortek Global HVAC, LLC*, 736 F. App'x 577, 578 (6th Cir. 2018). This is a serious problem. Absent the "authority to act promptly and independently" in the face of flagrant misconduct, this Court "[can]not administer public justice or enforce the rights of private litigants." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911). That includes public justice sought by the Trustee in performing his "public office under the Bankruptcy Code." *In re Brookover*, 352 F.3d 1083, 1089 (6th Cir. 2003).

For this reason, the Trustee has asked the Court to reimpose its original $375,000 punitive non-contempt sanction against PHH and to make this sanction payable to the Trustee. (*See Gravel* Bankr. Dkt. 119 at 4–7.) While the District Court's mandate forecloses the Trustee's request, 28 U.S.C. § 158(d)(2) requires certification of this outcome for circuit court review. This is because no controlling law exists in this circuit on substantial punitive non-contempt sanctions and other circuits disagree on this issue. *See id.* § 158(d)(2)(A).

Congress enacted § 158(d)(2) to remedy "the paucity of settled bankruptcy-law precedent." *Weber v. U.S. Trustee*, 484 F.3d 154, 158 (2d Cir. 2007). As such, § 158(d)(2) requires bankruptcy courts to fast-track appellate review of decisions "that raise controlling questions of law, concern matters of public importance, and arise under circumstances where a prompt, determinative ruling might avoid needless litigation." *Id.* The Court vindicates these purposes by granting certification here as well as a stay of further proceedings.

In response, PHH agrees with the Trustee that the District Court's mandate forecloses reimposition of a substantial punitive non-contempt sanction against PHH. (*See Gravel* Bankr. Dkt. 129 at 1–3.) As for the Trustee's requests to make this sanction payable to his office, grant certified review, and stay further proceedings, PHH raises a series of legal objections that misread the relevant law or knock down strawmen arguments. All this fruitless rhetoric, in turn, reveals a darker vision of the law that the Court should reject.

PHH wants a bankruptcy court system that works for PHH—and PHH alone. A system that affords PHH second chances that no one else enjoys. *See Charbono*, 790 F.3d at 89–90. A system that obligates the Trustee to issue endless warnings to PHH so that PHH may avoid taking steps to prevent rule violations in the first place. A system that gives PHH the final word on whether it will be subject to substantial punitive sanctions (i.e., as no party, in PHH's view, has standing to appeal a denial of such sanctions in cases like this).

The Trustee wants a bankruptcy court system that works for everyone—not just PHH. A system that lives up to its purpose: to "aid the unfortunate debtor by giving him a fresh start in life." *Stellwagen v. Clum,* 245 U.S. 605, 617 (1918). But that system is not possible unless this Court is secure in its power to impose sanctions capable of meeting all the ways that creditor misconduct may jeopardize a debtor's fresh start. The Trustee's Motion affords a clear path for clarifying this power. PHH offers the Court no reason to deviate from it.

ARGUMENT

**I. The Court should prioritize deciding the Trustee's Motion out of a concern for judicial uncertainty, judicial economy, and judicial restraint.**

In weighing the merits of the Trustee's Motion, a necessary antecedent issue arises: whether the Court should decide the Trustee's Motion first, or instead determine what kinds of sanctions this Court remains free to impose under the District Court's Mandate. (*See Gravel* Bankr. Dkt. 124.) On November 6, 2018, PHH filed a brief with the Court on the possibility of alternative sanctions. (*See Gravel* Bankr. Dkt 127 at 1–43.) The remarkable 43-page length of this brief confirms why the Court should decide the Trustee's Motion first.

Simply put, it makes no sense for the Court to wade through all these pages—much less put the Trustee to the trouble of responding to them—when the Trustee's Motion already stands to validate this Court's original understanding of its sanctions power (i.e., through certified Second Circuit review). And upon such validation, PHH's leftover objections to the Court's $375,000 sanction are easily disposed of light of uncontested facts[1] and the rule that "courts retain broad discretionary power to fashion novel and unique sanctions to fit the particular case."[2] *SEC v. Smith*, 710 F.3d 87, 98 (2d Cir. 2013) (citation omitted).

The Court therefore should not hesitate to decide the Trustee's Motion first. Indeed, by doing so, the Court advances not just one but <u>three</u> key interests: ending judicial uncertainty, maximizing judicial economy, and upholding judicial restraint.

<u>Ending Judicial Uncertainty</u>: In vacating this Court's September 12, 2016 sanctions order, the District Court struck at the heart of the bankruptcy system. In particular, the District

---

[1]    (*See Gravel* Bankr. Dkt. 117 at 3 n.2 ("Neither this Court nor the District Court identified any issue of fact so this Court … will focus exclusively on the open legal issues."); *see also Gravel* Dist. Ct. Dkt. 11 at 2 ("The facts giving rise to these [District Court] appeals were not in dispute before the Bankruptcy Court and are not challenged on appeal.").)

[2]    Besides arguing lack-of-authority in its District Court appeal, PHH also argued that this Court's original sanction was invalid because: (1) PHH did not violate the Debtors' Current Orders; (2) the sanction was excessive; and (3) PHH did not act in bad faith. (*See Gravel* Dist. Ct. Dkt. 3 at 49–56.) The District Court did not reach any of these objections given its lack-of-authority determination. Were the Second Circuit to affirm this Court's authority to impose a substantial punitive non-contempt sanction, PHH's leftover objections would collapse for two simple reasons. First, substantial deference is owed to this Court's determination of when its orders have been violated, as well as calculation of a proper sanction for such violations. *See In re Anderson*, 884 F.2d 382, 390–91 (2d Cir. 2018). Second, a *non-contempt* sanction does not require a finding of bad faith. *See In re Charbono*, 790 F.3d 80, 87–88 (1st Cir. 2015).

Court cast a long shadow over the ability of bankruptcy courts to independently discipline large creditors for flagrant abuses. In *Gravel, Beaulieu*, and *Knisley*, those flagrant abuses included PHH "ha[ving] knowledge of the Debtors Current Order, violat[ing] [the Order] … only correct[ing] [itself] … after the Trustee filed a motion for sanctions, and then assert[ing] [PHH] did not violate a court order at all." (*Gravel* Bankr. Dkt. 82 at 14 n.10.)

The disciplinary vacuum created by the District Court's Mandate is now having a nationwide effect on debtors and trustees seeking hold creditors accountable. Two recent bankruptcy orders illustrate this point. In *In re Bieter*, counsel for an Ohio debtor cited this Court's September 12, 2016 sanctions order to demonstrate why "punitive sanctions may be imposed … [under] Rule 3002.1." 590 B.R. 446, 2018 Bankr. LEXIS 2823, *19 n.7 (Bankr. S.D. Ohio 2018). Seizing on the District Court's Mandate, the bankruptcy court declared: "Counsel for [the Debtor] are reminded to cite valid case law. *See* Prof. Cond. Rules 1.1, 3.3(a)." *Id.* Similar treatment of this Court's sanctions order may be found in *In re Tollstrup*, No. 15-33924, 2018 Bankr. LEXIS 767, at *12–13 (Bankr. D. Or. Mar. 16, 2018) (embracing the District Court's Mandate as part of declaring: "I will not impose a monetary sanction").

Like leaks in a dam, this state of affairs only stands to get worse with time. "Th[e] power to sanction is a necessary precondition to the exercise of … judicial power." *Noble Cnty v. Rogers*, 745 N.E.2d 194, 198 (Ind. 2001). So long as the full extent of this Court's power to sanction remains in doubt, the Court's "effectiveness" as a court of justice is compromised. *Id.* Only the Trustee's Motion affords a simple, expeditious path for obtaining a Second Circuit decision that can put the preceding cloud of judicial uncertainty to rest.

Maximizing Judicial Economy: Judicial economy means "the efficient and concise use of judicial time and effort in the administration of justice." *Whiteco Indus., Inc. v. Nickolick*, 549 N.E.2d 396, 398 (Ind. Ct. App. 1990). Concern for judicial economy requires one to consider "the time and effort [to be] expended by both the trial and appellate courts as an integrated whole." *Id.* Against this backdrop, prioritization of the Trustee's Motion stands to allow the Court to conserve a major amount of judicial time and effort in two main ways.

**First**, the Court avoids spending unnecessary time and effort on deciding whether to impose alternative sanctions against PHH. Through a certified appeal arising from the Trustee's Motion, the Second Circuit may well uphold this Court's original view of its

sanctions power. And should the Second Circuit holds otherwise, the panel decision is bound to explain what sanctions remain open to bankruptcy courts—just like the District Court's Mandate. (*See Gravel* Dist. Ct. Dkt. 11 at 17.) Such guidance will then save this Court both time and effort in deciding what alternative sanctions can be imposed against PHH.

**Second**, the Court ensures the Second Circuit avoids spending unnecessary time and effort on the issue of appellate standing. PHH concedes that the Court "will secure … [the Trustee's] future standing on appeal" if the Court embraces the Trustee's request for direct payment of any punitive sanction that the Court would grant but for the District Court's Mandate. (*Gravel* Bankr. Dkt. 128 at 1.) The Second Circuit will then be able to focus its limited judicial time and staff resources on the key question at issue here: whether this Court has the authority to impose substantial punitive non-contempt sanctions.

Upholding Judicial Restraint: "The principle of judicial restraint provides that if resolution of an issue is dispositive, the case should be resolved on that basis without considering additional issues." *In re Meyer*, No. 1-12-bk-04042, 2018 Bankr. LEXIS 1041, at *23 (Bankr. M.D. Pa. April 4, 2018). Applied here, this principle militates against the Court opining on what alternative sanctions it is free to impose under the District Court's Mandate. After all, this Court's power to impose a substantial punitive non-contempt sanction is still a dispositive issue that the Second Circuit may fully vindicate on certified review.

Strong practical considerations bolster this conclusion. Imagine the Court opines that under the District Court's Mandate, the Court is limited to imposing punitive sanctions of $10,000 or less—i.e., amounts that fall well "short of" the Court's original $375,000 sanction. (*Gravel* Bankr. Dkt. 124 at 1.) The takeaway for large creditors like PHH will be that no matter how many bankruptcy violations they commit, the most they will ever pay is a $10,000 fine. The Court will have created a license for misconduct rather than a deterrent. That is reason enough for the Court to hold off addressing the limits of its sanctions power until the Second Circuit has been given the chance to address the breadth of this power.

Now, given that prioritizing the Trustee's Motion enables the Court to end judicial uncertainty, maximize judicial economy, and uphold judicial restraint, the question for the Court becomes: does PHH raise any meritorious objection to proceeding along the path laid out in the Trustee's Motion? It does not, as the following analysis proves.

**II.     Both the Trustee and PHH agree that the Trustee's request for reimposition of substantial punitive non-contempt sanctions should be denied.**

The Trustee has asked the Court to reimpose its original $375,000 punitive sanction against PHH. (*See Gravel* Bankr. Dkt. 119 at 7–11.) In doing so, the Trustee has conceded that the Court "must deny the Trustee's request" because the request is "inconsistent" with the District Court's Mandate. (*Id.* at 11.) At the same time, the Trustee has observed that this kind of admission "is a time-honored means of enabling higher review." (*Id.*)

PHH does not dispute any of this. (*See Gravel* Bankr. Dkt. 129 at 1–3.) PHH instead offers the Court a tedious recitation of the mandate rule and proclaims that following the path laid out by the Trustee's Motion would "impermissibly obstruct the mandates of the District Court and the Second Circuit." (*Id.* at 1.) But PHH never explains where this obstruction is to be found. Nor can it. *Denial* of the Trustee's sanctions-reimposition request accords with the District Court's *denial* of the Court's original sanction on lack-of-authority grounds. And litigation of the Trustee's Motion accords with the Second Circuit's contemplation *without limit* of "significant further proceedings" on remand. (*Gravel* 2d Cir. Dkt. 69.)

**A.     Lower courts are free to signal their disagreement with any law-of-the-case mandate they otherwise must follow.**

By denying the Trustee's sanctions-reimposition request, the Court acts in full compliance with the mandates of the District Court and Second Circuit here. (*See Gravel* Bankr. Dkt. 119 at 7–11.) PHH nevertheless tries to create the impression of obstruction by quoting various cases that expound the mandate rule in forceful terms. (*See Gravel* Bankr. Dkt. 119 at 7–11.) What PHH overlooks is the long-established freedom of lower courts to signal their disagreement with appellate mandates in the course of carrying them out.

In *Donohoe v. Consolidated Operating & Production Corp.*, the Seventh Circuit delineates this freedom. 30 F.3d 907, 910–11 (7th Cir. 1994). Addressing the contours of "[t]he law of the case doctrine," the *Donohoe* court explains that "[a] district court that disagrees with an appeals court's decision to remand a case for its further consideration … is in a position similar to the lower court that disagrees with controlling precedent. It should … signal its disagreement, but carry out the mandate." *Id.* at 910. The same principle equally covers bankruptcy courts faced with district court decisions to remand for further proceedings. *Cf. id.*

  **B. This Court may signal that but for the District Court's Mandate, the Court would reimpose its original $375,000 punitive non-contempt sanction.**

  Based on the signaling-disagreement principle, the Court may do what the Trustee has asked the Court to do: "[d]eny the Trustee's request for reimposition of the $375,000 sanction" while stating that "but for the District Court's decision, the Court would reimpose the $375,000 sanction and order payment of the sanction to the Trustee." (*Gravel* Bankr. Dkt 119 at 1.) And while PHH might wish otherwise, not one word of the District Court's Mandate or the Second Circuit's Mandate limits this Court's freedom to "report [its] conclusions while applying the existing law" of the case. *Gacy v. Welborn*, 994 F.2d 305, 310 (7th Cir. 1993).

  This leaves PHH's other major argument against the Trustee's sanctions-reimposition request (and concession that this request must be denied): that the Court's original $375,000 sanction was a punitive *criminal contempt* sanction, and not the punitive *non-contempt* sanction that the Trustee is asking the Court to reimpose. (*Gravel* Bankr. Dkt. 129 at 6–10.) If PHH is right about this, then PHH has only confirmed that the Trustee's Motion is a significant further proceeding insofar as adjudication of the Motion serves to clarify that: (1) the Trustee only seeks a punitive *non-contempt* sanction; and (2) the Court's original sanction was a punitive *non-contempt* sanction—or that but for the District Court's Mandate, the Court would impose such a sanction. *See In re Charbono*, 790 F.3d 80, 87 (1st Cir. 2015).

  PHH's sanctions analysis, however, is wrong. PHH assumes that only two types of sanctions exist: civil contempt and criminal contempt. (*See Gravel* Bankr. Dkt. 129 at 6–10.) On this basis, PHH insists the Court's original sanction had to be for criminal contempt because the sanction shares some of the features of criminal contempt—namely, a non-compensatory, retrospective focus. (*Id.*) But criminal contempt is also governed by Federal Rule of Criminal Procedure 42, and the Court's original sanction does not mention this rule. (*Gravel* Bankr. Dkt. 82 at 5–18.) The Court's original sanction also lacks any finding of contempt. (*Id.*) *Cf. Charbono*, 790 F.3d at 86 ("The bankruptcy court … made no finding of contempt …").

  At bottom, PHH refuses to believe that courts may "impose punitive non-contempt sanctions." *Charbono*, 790 F.3d at 87. But PHH's disbelief is not the law. PHH cites no Second Circuit or Supreme Court decision rejecting the existence of punitive non-contempt sanctions. PHH rather cites two Second Circuit cases holding that a "punitive sanction **on an individual (as opposed to a corporation or collective entity)**" will sometimes merit the same safeguards

that govern criminal contempt. *Mackler Prods., Inc. v. Cohen*, 146 F.3d 126, 130 (2d Cir. 1998) (emphasis added); *see also Mackler Prods., Inc. v. Cohen*, 225 F.3d 136, 142–43 (2d Cir. 2000). (*See Gravel* Bankr. Dkt. 129 at 7–9 (citing *Mackler*).) This cannot help PHH—a private corporation that boasts "$41 billion in mortgage financing." (*Gravel* Bankr. Dkt. 82 at 16.)

### C. This Court may signal that but for the District Court's Mandate, the Court would redirect payment of its original sanction to the Trustee.

Besides asking the Court to reimpose its original $375,000 sanction—a request that the Court must deny—the Trustee's Motion also asks the Court to hold that but for the District Court's mandate, the Court would order payment of the reimposed sanction to the Trustee. (*See Gravel* Bankr. Dkt. 119 at 8–11.) The Trustee makes this request to settle his standing to appeal and to fortify his ability to protect debtors against creditor misconduct. (*See id.*) PHH acknowledges in response that payment of sanctions to the Trustee would "secure … [the Trustee's] future standing on appeal." (*Gravel* Bankr. Dkt. 128 at 1.) This leads PHH to raise a host of facile objections to the Trustee's payment request. None is availing.

**First**, PHH argues the Trustee's payment request runs afoul of Bankruptcy Rule 3002.1. (*See Gravel* Bankr. Dkt. 129 at 3–5.) Rule 3002.1(i) speaks in broad terms, allowing the Court to "award other appropriate relief." Rule 3002.1 contains no language prohibiting the payment of a sanction to the Trustee. PHH's real argument here is that Rule 3002.1(i)—in PHH's view— does not allow punitive sanctions *at all*, no matter to whom these sanctions are paid. This view then leads PHH to miss that the Court's original sanction was also separately grounded on 11 U.S.C. § 105, which authorizes the Court to "tak[e] any action … necessary or appropriate to enforce or implement court orders or rules." *Id.* § 105(a). That language is more than sufficient to establish this Court's authority to order payment of a sanction to the Trustee.

**Second**, PHH argues that the Trustee's payment request cannot be effectuated "without a hearing." (*Gravel* Bankr. Dkt. 129 at 5–6.) PHH highlights the Trustee's view that the Court remains free to conclude that payment to the Trustee would be a permissible windfall. (*See id.; see also Gravel* Bankr. Dkt. 119 at 9–11.) PHH argues this means that PHH should be able to "conduct discovery" and "cross-examine the Trustee." (*Gravel* Bankr. Dkt. 129 at 5–6.) PHH appears to forget that it is the party being sanctioned. Windfall analysis is the prerogative of this Court. And just as no hearing was necessary for the Court to conclude that payment to

Law Line would be a permissible windfall, no hearing is necessary for the Court to reach the same conclusion as to the Trustee—especially given the Trustee's tender of an affidavit and annual financial statements whose respective validity is beyond reproach.

**Third,** PHH argues that the Trustee's payment request is untimely because the Trustee did not appeal the Court's original windfall analysis. (*See Gravel* Bankr. Dkt. 129 at 6.) PHH's argument presumes the existence a *final* decision. But as PHH successfully urged the Second Circuit to hold, no *final* decision exists here. (*See Gravel* 2d Cir. Dkt. 69.) Instead, the District Court's decision vacated the Court's original sanction in contemplation of "significant further proceedings" (*id.*), thereby "clear[ing] the path for future relitigation of the issues between the parties." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40–41 (1950).

### D. The concept of "indicative rulings" has no application here, as this Court presently has full jurisdiction over this bankruptcy proceeding.

PHH takes one last jab at the Trustee's Motion by charging that this Motion "asks the Court for an impermissible indicative opinion." (*Gravel* Bankr. Dkt. 129 at 3.). Governed by Bankruptcy Rule 8008, Federal Rule of Civil Procedure 62.1, and Federal Rule of Appellate Procedure 12.1, "indicative rulings" address the situation that exists when an appeal deprives a lower court of jurisdiction to address a timely-filed motion. In these situations, the lower court may *indicate* how it would rule on the motion if the case were remanded for this purpose. *See id.* This doctrine has no bearing here. The District Court and Second Circuit have returned jurisdiction to this Court, leaving the Court fully empowered to address the Trustee's Motion in any manner that the Court deems proper. That includes signaling the Court's disagreement with the District Court's Mandate in precisely the manner that the Trustee has requested. *See Donohoe v. Consol. Op. & Prod. Corp.*, 30 F.3d 907, 910–11 (7th Cir. 1994).

### III. PHH raises no argument and cites no authority that would permit the Court to deviate from its mandatory certification duty under 28 U.S.C. § 158(d)(2).

As explained above, the Trustee's Motion must be denied because the District Court has ruled that bankruptcy courts are not empowered—i.e., by rule, statute, or inherent authority— to impose substantial punitive non-contempt sanctions. (*Gravel* Bankr. Dkt. 119 at 11–14.) This denial then mandates certification of the Court's order to enable Second Circuit review. Under 28 U.S.C. § 158(d)(2), "direct certification … to the circuit court of appeals is mandatory" when

a bankruptcy court order involves an important, unsettled, or dispositive legal question. *In re Otero Cnty. Hosp. Ass'n, Inc.*, 584 B.R. 783, 790 (Bankr. D.N.M. 2018).

PHH does not dispute the mandatory force of § 158(d)(2). (*See Gravel* Bankr. Dkt. 129 at 10–13.) PHH instead argues that the Court may look past its certification duty here because: (1) the Trustee's certification request is untimely; (2) the Trustee's proposed questions for certification are irrelevant or improper; and (3) denial of the Trustee's Motion does not entail a question of law that meets § 158(d)(2)'s certification criteria. The Court should reject these objections, each of which rests on key misconceptions about this proceeding.

### A. The Trustee's certification request is timely because the Trustee's Motion entails a new, separate proceeding for certification purposes.

PHH argues that the Trustee's certification request is untimely because the Trustee's opportunity to request certification elapsed 60 days after the Court issued its original sanctions order on September 12, 2016. (*See Gravel* Bankr. Dkt. 129 at 8.) Not so. Under § 158(d)(2)'s plain text, certification may be granted "on the request of a party" as to each bankruptcy court "judgment, order, or decree." 28 U.S.C. § 158(d)(2)(A); *see id.* § 158(d)(2)(E) ("Any request … for certification shall be made not later than 60 days after the entry of the judgment, order, or decree."). This means that each bankruptcy court order gives rise to its own 60-day window for certification. The Trustee's certification request then cannot be untimely—the clock only starts to run *after* the Court enters an order deciding the Trustee's Motion.

Support for this conclusion may be found in *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686 (2015). At issue was whether bankruptcy orders denying plan confirmation were "final" decisions for purposes of circuit court review under 28 U.S.C. § 158(d)(1). *See id.* at 1691. The Supreme Court held that a plan denial is not final if the debtor can propose another plan. *See id.* at 1692. The Court also noted its "expectation that lower courts will certify and accept interlocutory appeals from plan denials in appropriate cases." *Id.* at 1696.

This analysis only makes sense if each plan denial (with leave to amend) comes with its own certified-review deadline. By contrast, under PHH's view of certified review, passing on certified review as to one plan denial means passing on certified review as to every following plan denial. Now, PHH might argue that such preclusion only applies when two plans are the same. But the Trustee's Motion here is not the same as the motion that spurred the Court's original sanctions order. The Trustee's Motion requests payment of sanctions to the Trustee.

And according to PHH, the Trustee's Motion seeks a type of sanction that the Court's original sanctions order did not impose: a punitive *non-contempt* sanction. This affords the Court every reason to conclude that the Trustee's certification request is timely made.

### B. The Trustee's proposed questions for certification are relevant and proper.

PHH argues that the Trustee's three proposed questions for certification are irrelevant because they concern *non-contempt* sanctions and the Court's original sanction was a *criminal contempt* sanction. (*See Gravel* Bankr. Dkt. 129 at 10.) The Trustee has already explained why the Court's original sanction was a *non-contempt* sanction. (*See supra* Part II.B.) But assuming that PHH's analysis is correct, this does not affect the relevance of the Trustee's questions in the slightest. These questions pertain to the Court's disposition of the Trustee's Motion—and the only sanction this Motion seeks is a punitive *non-contempt* sanction.

PHH also complains that the Trustee's proposed questions for certification are improper because the Trustee asks the Court "to certify just three questions to the Second Circuit." (*Gravel* Bankr. Dkt. 129 at 11–12.) But to the extent there are other questions that PHH would like to see resolved by the Second Circuit on certified review, Bankruptcy Rule 8006(f)(3) provides a clear solution: PHH may "file a cross-request for certification" with this Court that includes any question that PHH believes should also certified.

It is then telling that: (1) PHH has yet to file a cross-request for certification; and (2) in its opposition brief, PHH does not identify any specific question that PHH would like to be included on certified review. These omissions indicate that PHH's actual objection to the Trustee's proposed questions is that these questions exist in the first place. PHH opposes certified review under any circumstances—it wants all of this Court's decision-making on remand to conform to "a binary choice" of PHH's design. (*Gravel* Bankr. Dkt. 129 at 11–12.) Once this perspective is accounted for, PHH's objections here ring hollow.

PHH also cannot overcome the reality that "under § 158(d)(2)(A), the bankruptcy court gets to determine which legal questions are implicated by its own orders and whether those legal questions warrant certification." *Marshall v. Blake*, 885 F.3d 1065, 1072 (7th Cir. 2018). And this remains true no matter how much PHH may decry certification here as impermissible or inappropriate. The bottom line is that "[g]iven the bankruptcy court's familiarity with its own orders, it is in the best position to make th[e] determination [to certify]." *Id.*

### C. Denial of the Trustee's Motion entails questions of law that meet the applicable statutory criteria for certification.

PHH argues that the certification criteria set forth under 28 U.S.C. § 158(d)(2)(A) are not met here. (*Gravel* Bankr. Dkt. 129 at 12–13.) Each of PHH's objections, however, rests on a false presumption—most of which the Trustee has already addressed above.

Lack of controlling precedent: PHH concedes this criterion is met to the extent that there is "no controlling decision with respect to the questions raised by the Trustee"—i.e., whether bankruptcy courts may issue substantial punitive non-contempt sanctions by rule, statute, or inherent authority. (*Gravel* Bankr. Dkt. 129 at 12.) This leads PHH to repeat its view that the Trustee's questions are irrelevant because the Court's original sanction was a *criminal contempt* sanction, rather than a *non-contempt* sanction. But as the Trustee explains above, PHH's argument makes no difference. If PHH is wrong in its characterization of the Court's original sanction—and it almost certainly is—then the Trustee's Motion raises questions that must be certified by PHH's own admission. And if PHH is right in its characterization of the Court's original sanction, the fact remains that the operative document here is the Trustee's Motion, which only seeks imposition of a substantial punitive non-contempt sanction. Any order denying this Motion then involves punitive non-contempt sanctions, raising questions that PHH concedes lack controlling authority and therefore must be certified.

Presence of conflicting decisions: Unable to deny that conflicting decisions exist among the circuits on the Trustee's proposed questions, PHH argues that § 158(d)(2)'s conflicting-decisions criterion still is not met here because this criterion requires "conflicting decisions within the same circuit." (*Gravel* Bankr. Dkt. 129 at 12–13.). Such analysis abridges the plain text of § 158(d)(2)(A)(ii), which mandates certification when a bankruptcy order "involves a question of law requiring resolution of conflicting decisions." That is all. The provision does not say "resolution of conflicting decisions *within a circuit*." And circuit courts have not read any such limitation into § 158(d)(2)(A)(ii) in granting certified review under this criterion. *See Tidewater Fin. Co. v. Kenney*, 531 F.3d 312, 315 (4th Cir. 2008) ("[This] direct appeal … requires resolution of conflicting decisions among bankruptcy courts in various circuits."); *cf. In re Barrett*, 543 F.3d 1239, 1241 (11th Cir. 2008) (detailing the court's decision to accept certified review of a bankruptcy appeal on an issue that had initially divided the circuits).

**IV.    PHH raises no meritorious objection to the Trustee's request for a stay of proceedings pending the final disposition of a certified appeal.**

Upon any certification of this Court's order denying the Trustee's Motion, the Court should also grant a stay pending the outcome of the certified appeal. (*See Gravel* Bankr. Dkt. 119 at 14–15.) The Court should also find that PHH's objections to issuance of a stay here lack merit insofar as these objections omit essential facts or distort the relevant law.

**A.    The Trustee enjoys a substantial probability of success.**

PHH argues that the Trustee is unlikely to prevail before the Second Circuit because the lead decisions supporting the Trustee's position are distinguishable. (*See Gravel* Bankr. Dkt. 129 at 14–15.) PHH maintains that *In re Charbono*, 790 F.3d 80 (1st Cir. 2015) does not support the Trustee's view that bankruptcy courts may impose *substantial* punitive non-contempt sanctions because the sanction at issue in *Charbono* "was a mere $100." (*See Gravel* Bankr. Dkt. 129 at 14.) But PHH omits a crucial fact: the $100 punitive non-contempt sanction at issue in *Charbono* was imposed against an *impoverished* debtor. *See* 790 F.3d at 90. In fact, the debtor's poverty was so significant that the bankruptcy court decided to "halve[] the $200 sanction requested by the Trustee because the debtor had a cash-flow problem." *Id*.

Of course, $100 may be a drop in the bucket for a large corporation like PHH. But for the poorest of the poor, every dollar counts. Consider that "[w]hile thirty dollars may not seem like much to the governing class in our society, including lawyers and judges, it is for too many people a vital amount of cash." *Markadonatos v. Vill. of Woodridge*, 739 F.3d 984, 1000 (7th Cir., 2014) (Hamilton, J., dissenting). "Thirty dollars is roughly the average allotment under the federal Food Stamp program … to help feed an adult for a week. It's also the federal minimum wage for more than half a day of work." *Id.* Hence, the $100 sanction imposed in *Charbono* just as substantial as this Court's original $375,000 sanction here.

PHH next argues that the Trustee cannot rely on *In re Anderson*, 884 F.2d 382 (2d Cir. 2018). (*Gravel* Bankr. Dkt. 129 at 14.) The Second Circuit notes in *Anderson* that "[a] bankruptcy court retains a unique expertise in interpreting its own injunctions and determining when they have been violated." 884 F.2d at 391. PHH tries to cabin this statement by arguing *Anderson is* only about a "unique form" of injunction. (*Gravel* Bankr. Dkt. 129 at 14.) PHH then reverses course and argues that because this unique injunction is enforceable only by "contempt," this disproves the ability of bankruptcy courts to impose non-contempt sanctions. PHH is unable

to see the forest for the trees: namely, *Anderson*'s resounding view that "Congress afforded the bankruptcy courts **wide latitude** to enforce their own orders." 884 F.2d at 391 (emphasis added). That point easily covers substantial punitive non-contempt sanctions.

PHH finally argues that because the Second Circuit dismissed the Trustee's previous appeals under 28 U.S.C. § 158(d)(1) for lack of a "final" decision, the Second Circuit may also be expected to reject a certified appeal. (*See Gravel* Bankr. Dkt. 129 at 14–15.) But an appeal under § 158(d)(2) is an entirely different animal from an appeal under § 158(d)(1)—it is meant to be a "useful safety valve[] for … addressing important legal questions." *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1696 (2015). Based on that standard, versus the far more demanding test of finality, the Trustee has a substantial chance of securing certified review.

### B. The Trustee faces irreparable injury without a stay.

The Trustee has limited resources at his disposal—resources that he must devote to the efficient management of hundreds of active Chapter 13 cases in this District. (*See id.* at 10 n.6, 15.) Absent a stay, these limited resources stand to be consumed by litigation over questions that a certified appeal may render superfluous. (*See id.*) Should any doubt exist on this point, the Court need only consider the 43-page brief that PHH filed on November 6, 2018 on the issue of possible alternative sanctions. (*See Gravel* Bankr. Dkt 127 at 1–43.)

PHH's only counterpoint is that "monetary losses do not constitute irreparable injury." (*Gravel* Bankr. Dkt. 129 at 15.) PHH thus attempts to make it seem as if the Trustee is just like any other private litigant. But he is not. The Trustee is instead a highly integral part of the bankruptcy system. *See In re Brookover*, 352 F.3d 1083, 1089 (6th Cir. 2003). This role then calls for the Court to recognize the existence of irreparable injuries on the part of the Trustee that other litigants may not be able to claim because "[t]he volume of chapter 13 cases … requires efficient methods." *In re Ward*, 511 B.R. 909, 920 (Bankr. E.D. Wis. 2014).

### C. The public interest favors a stay.

The Trustee has argued that a stay pending appeal will conserve limited resources on the part of the Court and the Trustee, both of whom serve public ends. (*See Gravel* Bankr. Dkt. 119 at 15.) PHH asks the Court to reject this view because: (1) the Trustee has "mistakenly equat[ed] his role with that of a U.S. Trustee"; (2) the Trustee's role is limited to representing "the interests of a bankruptcy estate … with the ultimate goal of profiting"; (3) "no legal

authority" exists to show that "a standing trustee may police the bankruptcy system or seek sanctions for the alleged abuse of the bankruptcy process"; and (4) the Trustee's Motion reflects an illicit "profit motive." (*Gravel* Bankr. Dkt. 129 at 16.)

PHH could not be more wrong. **First**, "standing trustees receive delegated authority; they do not merely comply with the law. They both 'assist' and 'carry out' the duties and tasks of their federal superiors." *Bell v. Thornburg*, 743 F.3d 84, 89 (5th Cir. 2014). **Second**, "as a fiduciary and an officer of the Court, a chapter 13 trustee has the duties of candor, care, loyalty, and impartiality." *In re Ch. 13 Plan Admin.*, No. 15-701, 2016 Bankr. LEXIS 1938, at *10 (Bankr. S.D. Tex. May 5, 2016). **Third,** "discovering … egregious conduct … fall[s] within the penumbra of the … statutory duties imposed upon" Chapter 13 trustees. *In re Andreas*, 373 B.R. 864, 876 (Bankr. N.D. Ill. 2007). **Fourth**, with the Trustee's maximum annual compensation fixed by 28 U.S.C. § 586(e), payment of monetary sanctions to the Trustee stands to aid Chapter 13 debtors by reducing their percentage fees. (*See Gravel* Bankr. Dkt. 119 at 11.)

While PHH's ongoing refusal to acknowledge the Trustee's public role is disappointing, it is not surprising. This refusal is part and parcel of the same behavior that led PHH between 2012 and 2014 to believe that it could "wait and see if [PHH] get[s] a motion" after receiving multiple Trustee letters establishing that PHH was "not complying with the local rules." (*Gravel* Bankr. Dkt. 98 at 13–14.) The persistence of PHH's disregard for the Trustee today then only affirms why the Court should follow the course laid out in the Trustee's Motion, including the issuance of a stay pending the outcome of a certified appeal.

## Conclusion

Based on the preceding facts and argument, the Court should: (1) deny the sanctions requested by the Trustee; (2) hold that but for the District Court's decision, the Court would grant the requested sanctions and direct payment to the Trustee; (3) certify the Court's order for appeal under 28 U.S.C. § 158(d)(2); and (4) issue a stay pending appeal.

Respectfully submitted,

Dated: November 13, 2018
/s/Jan M. Sensenich
Jan M. Sensenich
Jan M. Sensenich
CHAPTER 13 STANDING TRUSTEE
P.O. Box 1326

Norwich, VT 05055
T: (802) 649-1213
F: (802) 649-1390
jansensenich@vermont13trustee.com

Mahesha P. Subbaraman*
  *Special Appellate Counsel to the*
  *Chapter 13 Trustee*
SUBBARAMAN PLLC
222 S. 9th Street, Suite 1600
Minneapolis, MN 55402
T: (612) 315-9210
F: (612) 315-9210
mps@subblaw.com

* Admitted *pro hac vice*

*Counsel for the Chapter 13 Standing Trustee*
*Jan M. Sensenich*

## CERTIFICATE OF SERVICE

      I understand that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) generated in connection with this document.

/s/ *Jan M. Sensenich*

Jan M. Sensenich
Chapter 13 Standing Trustee
District of Vermont