**UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT**

Filed & Entered
On Docket
July 11, 2019

_____

**In re:**
    **Nicholas and Amanda Gravel,**　　　　　　　　**Chapter 13 Case**
                  **Debtors.**　　　　　　　　　　　　　　　　**# 11-10112**
_____

**In re:**
    **Allen and Laurie Beaulieu,**　　　　　　　　　　**Chapter 13 Case**
                  **Debtors.**　　　　　　　　　　　　　　　　**# 11-10281**
_____

**In re:**
    **Matthew and Emilie Knisley,**　　　　　　　　　**Chapter 13 Case**
                  **Debtors.**　　　　　　　　　　　　　　　　**# 12-10512**
_____

*Appearances:*　*Mahesha Subbaraman, Esq.*　　　　*Alexandra Edelman, Esq.*
　　　　　　　　*Subbaraman PLLC*　　　　　　　　　　*Primmer Piper Eggleston & Cramer, PC*
　　　　　　　　*Minneapolis, Minnesota*　　　　　　　　*Burlington, Vermont*
　　　　　　　　*For the Trustee*　　　　　　　　　　　*For the Creditor*

<u>**ORDER**</u>
<u>**GRANTING PHH'S MOTION FOR A STAY PENDING APPEAL, ON CONDITION THAT IT POST A BOND**</u>

On June 27, 2019, the Court issued a memorandum of decision and order, on remand, (i) imposing sanctions on PHH Mortgage Corporation ("PHH") in the amount of $175,000 in the Gravel case, $100,000 in the Beaulieu case, and $25,000 in the Knisley case, based on PHH's violations of Bankruptcy Rule 3002.1 and Debtor Current Orders in those cases, and (ii) directing PHH to pay those sums within fourteen (14) days (doc. ## 134, 135, the "Decision"). On Friday, July 5, 2019,[1] PHH filed what it labeled an "Emergency Motion" for a stay pending appeal (doc. # 139, the "PHH Stay Motion"). Before business hours on Monday, July 8, 2019, the chapter 13 trustee, i.e., the prevailing party in the Decision (the "Trustee"), filed opposition to the Stay Motion (doc. # 140, the "Trustee Opposition"), and after business hours on that same date, PHH filed a Reply to the Trustee Opposition (doc. #141, the "PHH Reply").

---

[1] This Court, as well as both the U.S. District Court for the District of Vermont and the Second Circuit Court, was closed that day. Thus, the emergency nature of the instant motion is of PHH's making.

The Court presumes the reader's familiarity with the record and dispenses with a factual and procedural summary.[2] Instead, it turns directly to the merits of the PHH Stay Motion and responsive papers, to address the questions of whether PHH has met its burden of proof for a stay of its payment obligations pending its appeal of the Decision and, if so, whether PHH must post a bond.

### I. THE STAY PENDING APPEAL

The Bankruptcy Code provides that the filing of an appeal "does not stay any proceeding of the bankruptcy court . . . from which the appeal is taken, unless the respective bankruptcy court . . . in which the appeal is pending [] issues a stay of such proceeding pending the appeal." In re DuCharme, 2008 Bankr. LEXIS 764, *4 (Bankr. D. Vt. 2008) (quoting 28 U.S.C. § 158(d)(2)(D)). The movant must file a motion seeking a stay under Federal Bankruptcy Rule 8007, which provides, in pertinent part, as follows:

> IN GENERAL. Ordinarily, a party must move first in the bankruptcy court for the following relief:
> (A) a stay of a judgment, order, or decree of the bankruptcy court pending appeal;
> (B) the approval of a bond or other security provided to obtain a stay of judgment;
> (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending; or
> (D) the suspension or continuation of proceedings in a case or other relief permitted by subdivision (e).

FED. R. BANKR. P. 8007(a)(1).

The decision of whether to grant a stay of an order pending appeal "lies within the sound discretion of the court." In re Sabine Oil & Gas Corp., 548 B.R. 674, 681 (Bankr. S.D.N.Y. 2016); see also Int'l Christian Broad., Inc. v. Koper (In re Koper), 560 B.R. 68, 72 (Bankr. E.D.N.Y. 2016); In re General Motors Corp., 409 B.R. 24, 30 (Bankr. S.D.N.Y. 2009). "A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." Nken v. Holder, 556 U.S. 418, 433 (2009).

As the moving party, PHH bears the burden of showing it is entitled to a stay. See, e.g., Nken, 556 U.S. at 433-34 (ruling "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of [this] discretion"); United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc., 44 F.3d 1082, 1084 (2d Cir. 1995); Int'l Christian Broad., Inc. v. Koper (In re

---

[2] The Court also relies on the same case law and analysis it articulated in a prior case, with respect to the applicable legal standard for relief and burden of proof, see In re Simpson, no. 17-10442, 2018 Bankr. LEXIS 1211 (Bankr. D. Vt. 2018), rather than reinventing what is still a well-functioning wheel.

Koper), 560 B.R. 68, 73 (Bankr. E.D.N.Y. 2016). The burden on the movant is a "heavy one." In re DJK Residential, LLC, 2008 U.S. Dist. LEXIS 19801, *5 (S.D.N.Y. 2008) (citing In re Adelphia Commc'ns Corp., 333 B.R. 649, 659 (S.D.N.Y. 2005)). See also Private Sanitation Ass'n, 44 F.3d at 1084 ("A party seeking a stay of a lower court's order bears a difficult burden.").

The standard for obtaining a stay pending appeal "is well-established in this Circuit." Obuchowski v. Poulin (In re Stevens), 2001 Bankr. LEXIS 2189, *10 (Bankr. D. Vt. 2001). In deciding whether to issue a discretionary stay pending appeal of a bankruptcy court order, courts consider four factors: (1) whether the movant will suffer irreparable injury absent a stay; (2) whether a party will suffer substantial injury if a stay is issued; (3) whether the movant has demonstrated "a substantial possibility, although less than a likelihood, of success" on appeal; and (4) the public interests that may be affected. Int'l Christian Broad, Inc. v. Koper (In re Koper), 560 B.R. 68, 72 (Bankr. E.D.N.Y. 2016) (citing Hirschfeld v. Bd. of Elections in the City of N.Y., 984 F.2d 35, 39 (2d Cir. 1993)). See also Nken v. Holder, 556 U.S. 418, 434 (2009).

Of the factors, the likelihood of success on appeal and whether the movant will be irreparably injured absent a stay "are the most critical." Nken v. Holder, 556 U.S. 418, 434 (2009). Although some courts in the Second Circuit have required the movant to establish all four factors, see, e.g., Bijan-Sara Corp. v. FDIC (In re Bijan-Sara Corp.), 203 B.R. 358, 360 (B.A.P. 2d Cir. 1996) (finding movant's "failure to satisfy one prong of the standard for granting a stay pending appeal dooms his motion"), "the Circuit and more recent cases have engaged in a balancing process with respect to the four factors, as opposed to adopting a rigid rule." In re Sabine Oil & Gas Corp., 548 B.R. 674, 681 (Bankr. S.D.N.Y. 2016). "[T]he Second Circuit has consistently treated the inquiry of whether to grant a stay pending appeal as a balancing of factors that must be weighed." In re Adelphia Communs. Corp., 361 B.R. 337, 347 (S.D.N.Y. 2007); see also Mohammed v. Reno, 309 F.3d 95, 101 (2d Cir. 2002) (reaching a determination "[a]fter weighing the four factors relevant to the grant of a stay"). "The Second Circuit has 'also noted that the degree to which a factor must be present varies with the strength of the other factors, meaning that 'the more of one [factor] excuses less of the other.'" In re DuCharme, 2008 Bankr. LEXIS 764, *4 (Bankr. D. Vt. 2008) (quoting World Trade Center Disaster Site Litig., 503 F.3d 167, 170 (2d Cir. 2007)). Accordingly, this Court will examine PHH's arguments on each of the four factors in order of their importance in this case.

### A. SUBSTANTIAL POSSIBILITY OF SUCCESS ON APPEAL

In a motion for stay pending appeal, "[t]he single most important factor is likelihood of success on the merits." In re Taub, 470 B.R. 273, 278 (E.D.N.Y. 2012). Since Hirschfeld v. Board of Elections in

City of New York, 984 F.2d 35 (2d Cir. 1993), "the likelihood of success requirement has possibly evolved somewhat." In re Creative Fin., Ltd. (In Liquidation), 543 B.R. 498, 525 (Bankr. S.D.N.Y. 2016). In Hirschfeld, the Second Circuit "eliminated the more onerous requirement of 'likelihood of success on appeal.'" In re 473 West End Realty Corp., 507 B.R. 496, 501 (Bankr. S.D.N.Y. 2014) (quoting In re Country Squire Assocs. of Carle Place, L.P., 203 B.R. 182, 184 (B.A.P. 2d Cir. 1996)). Instead, the "substantial possibility of success" test applies. To satisfy this prong of the test, PHH must establish it has at least a substantial possibility – though not necessarily a likelihood – of success on appeal.

PHH argues it is likely to succeed on appeal for several reasons. First, it argues this Court did not follow the mandate on remand from the District Court (doc. # 139, p. 7). PHH's argument is premised on an understanding that the District Court's Order vacated this Court's entire Sanctions Decision, i.e., not just the award of sanctions but also all findings and conclusions in that decision (doc. # 139, p. 7). That is not this Court's understanding of its mandate on remand, primarily because the remand concluded with the directive that this Court either refer this matter to the District Court for consideration of criminal sanctions or "take steps to enforce its orders short of punitive sanctions of the scope and type imposed in these cases," without any reference to a reassessment of the underlying findings and conclusions (doc.# 104, p. 17). However, PHH's reading is not implausible and, if it is correct, it could increase the likelihood of PHH's success on appeal. PHH also argues its appeal is likely to succeed because, in issuing the sanctions in the Decision, this Court exceeded its authority to impose punitive sanctions under Rule 3002.1(i) and § 105 (doc. # 139, pp. 9-10). Both the District Court and this Court have acknowledged "'the question of whether Rule 3002.1(i) authorizes the imposition of punitive sanctions appears to be a question of first impression, not just in the Second Circuit, but across the nation'" (doc. # 134) (quoting Remand Decision, doc. # 104, p. 8). Although PHH has not pointed to caselaw that conclusively undercuts this Court's rationale in imposing the type and amount of sanctions it imposed in the Decision, this lack of appellate guidance as to this Court's authority to impose those sanctions, as well as PHH's plausible alternative reading of this Court's mandate on remand, lead this Court to find PHH has met its burden to establish it has a substantial possibility of success on appeal.

Additionally, although PHH did not mention it, in exercising its discretion here, the Court deems it appropriate to consider the "serious questions" standard, in determining if the "likelihood of success" prong warrants a stay pending appeal. See Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd., 598 F.3d 30, 35 (2d Cir. 2010). The Second Circuit has "long recognized that the 'likelihood of success on the merits' that is required for both a preliminary injunction and a stay can be satisfied if there are 'serious questions' going to the merits of the dispute and the applicant is able to

4

establish that the balance of hardships tips <u>decidedly</u> in its favor." <u>In re A2P SMS Antitrust Litig.</u>, 2014 U.S. Dist. LEXIS 120323, at *7 (S.D.N.Y. 2014) (citing <u>Citigroup</u>, 598 F.3d at 35) (emphasis original). "The 'likelihood of success' and 'sufficiently serious question' standards are not qualitatively different from one another; rather, they are two different points along a continuum of probability." <u>FPSDA II, LLC v. Larin (In re FPSDA I, LLC)</u>, 2012 Bankr. LEXIS 5906, at *23 (Bankr. E.D.N.Y. 2012). In <u>A2P</u>, the Southern District of New York acknowledged that the underlying decision being appealed was a "close one" because "there [was] no controlling Supreme Court or Second Circuit precedent on point and the only available guiding precedent does not cut decisively in either direction" and, "[g]iven this lack of clear precedent and the divided views of several courts," the <u>A2P</u> court found the appeal in question "raise[d] serious questions going to the merits of the present dispute." <u>In re A2P SMS Antitrust Litig.</u>, 2014 U.S. Dist. LEXIS 120323, at *9. Given the legal issues raised in the Decision, as well as the absence of controlling Second Circuit precedent on point and the divided views of other circuits, the Court finds analysis under the "serious questions" standard, in the context of this matter, further solidifies PHH's establishment of the "likelihood of success" factor.

Together, the PHH arguments and controlling law satisfy this first prong, and weigh in favor of granting a stay.

B. I<span style="font-variant:small-caps">RREPARABLE</span> H<span style="font-variant:small-caps">ARM</span>

"A showing of irreparable harm … must be neither remote nor speculative, but actual and imminent." <u>In re Richmond</u>, 2014 Bankr. LEXIS 4332, *10 (Bankr. E.D.N.Y. 2014). Irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." <u>Brenntag Int'l Chems., Inc. v. Bank of India</u>, 175 F.3d 245, 249–50 (2d Cir. 1999).

In its Stay Motion, PHH argues that, absent the granting of a stay and relief from the obligation to pay the sanctions to the Trustee and Legal Services Vermont, "there is no method under the Bankruptcy Code to recover such monies in the event that the Remand Order is reversed on appeal" (doc. # 139, p. 10). PHH points to the "financial difficulties" the Trustee cited as a rationale for awarding the sanctions to his office (doc. # 139, p. 11). PHH also contends it will "suffer irreparable harm to its business reputation, customer base and potential partners" if it pays the sanctions required and the Decision is then overturned on appeal (doc. # 139, p. 11).

The Trustee counters by pointing to caselaw finding "a showing of irreparable injury is not satisfied by a mere claim of financial expense" (doc. # 140, p. 8) (quoting <u>In re Stevens</u>, 2001 Bankr. LEXIS 2189, at *12 (Bankr. D. Vt. 2001)). The Trustee also argues that PHH "cites nothing to support its

5

view" that irreparable injury can be shown by an inability to recover fines or sanctions paid in the event of a reversal on appeal (doc. # 140, p. 9). Finally, the Trustee asserts the weight of caselaw is against PHH's contention that harm to its business reputation can demonstrate irreparable harm (doc. # 140, p. 9) (citing Sampson v. Murray, 415 U.S. 61, 91 (1974)).

The Trustee's contention that potential harm to business reputation is insufficient to demonstrate irreparable harm for purposes of obtaining a stay pending appeal is supported by controlling caselaw. See, e.g., Sampson, 415 U.S. at 91–92 (finding movant's argument that it would suffer humiliation and damage to reputation "far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction"); Fitzgerald v. Delafield (In re Williams), 2018 Bankr. LEXIS 2320, at **14–15 (Bankr. W.D. Va. 2018) (finding "any reputational damage caused by this case would be cured by prevailing on appeal.") PHH has failed to defeat that argument.

PHH's argument that it may not recover all of the sanctions paid to the Trustee is based solely on a single sentence in the Trustee's Declaration in support of his motion to reimpose sanctions. (See doc. # 119-1, ¶ 7) ("In the years since I filed my June 2016 sanctions motion, the budget for my office has suffered a major financial downturn."). PHH must "explain why it would be difficult or impossible to recoup money paid" to the Trustee or Legal Services Vermont; i.e. through "fact[s] … indicating, for example, that [the sanctions recipients] will not be able to pay" PHH in the event the sanctions are overturned on appeal. Miller v. City of Ithaca, 2019 U.S. Dist. LEXIS 57184 (N.D.N.Y. 2019) (citing Philip Morris, 561 U.S. at 1304). See also WMS Motor Sales v. Reese (In re Reese), 2011 Bankr. LEXIS 5779 (Bankr. N.D. Ohio 2011) (finding movant presented "no evidence – or even a suggestion – that [the sanctions payee] would not be able to return all or any part of the Sanction Amount that [movant] may pay … in the event the Sanctions Order might be reversed.") PHH attempts to bolster its position by pointing to the absence of any security from the Trustee or Legal Services Vermont, which would ensure they would have the funds to repay PHH in the event those sanctions are set aside. This is insufficient. "A stay pending appeal 'should not issue upon a plaintiff's imaginative, worst case scenario of the consequences flowing from the defendant's alleged wrong but upon a concrete showing of imminent irreparable injury.'" New York Skyline, Inc. v. Empire State Bldg. Co. L.L.C. (In re New York Skyline, Inc.), 2013 Bankr. LEXIS 4141 (Bankr. S.D.N.Y. 2013) (citing USA Network v. Jones Intercable, Inc., 704 F. Supp. 488, 491 (S.D.N.Y. 1989)). The potential inability of PHH to recover the sanctions its pays pursuant to the Decision, in the event its appeal is successful, is too speculative to prevail here. See, e.g., Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc., 2012 U.S. Dist. LEXIS 123912 (W.D. Mich. 2012)

("Plaintiffs' claim that monetary relief will not be available at the conclusion of this case and that equitable relief is necessary to protect their monetary remedy is speculative at best.").

Finally, the Court considers the question of what financial loss would be "irreparable" to PHH. By all accounts, PHH has substantial resources which could justify applying a different standard to PHH than it would, for example, to a wage earner, in determining whether a loss of $300,000 would actually cause it "irreparable harm." This Court does not take lightly the significance of such a loss, but the burden is on PHH to demonstrate that even if (a) it obtained a reversal on appeal, and (b) the Trustee and/or Legal Services Vermont could not promptly refund the sanctions monies, that (c) this would actually create irreparable harm to PHH. As this Court's Decision makes clear, it does not believe any of the sanctions it imposed, individually, are "serious" in amount, for PHH, and irreparable harm is a higher threshold.

For all of these reasons, the Court finds PHH has not met its burden on the irreparable injury prong of the test.

### C. Harm to Non-Movant and Other Parties

The third prong of the salient test requires PHH to establish "the non-moving party or other parties will not suffer substantial harm if the stay is granted. In other words, the moving party must show that the balance of harms tips in favor of granting the stay." In re 473 West End Realty Corp., 507 B.R. 496, 507 (Bankr. S.D.N.Y. 2014). "This factor is the other side of the coin to irreparable harm. The court must measure the harm to the non-movant ... and balance the harm incurring to all parties." In re Pertuset, 2012 Bankr. LEXIS 2160, *11 (Bankr. S.D. Ohio 2012) (quoting In re Lickman, 301 B.R. 739, 742 (Bankr. M.D. Fla. 2003)).

PHH has shown the Trustee and Legal Services Vermont will not suffer substantial harm in the event a stay pending appeal is issued. There was no evidence demonstrating any harm to the Debtors in this case, which was a crucial factor in this Court's decision to award the sanctions to the Trustee and Legal Services Vermont, rather than the Debtors (doc. # 134, p. 33). Issuing a stay pending appeal will not result in injury to the Debtors' estates, see In re Am. Land Acquisition Corp., 2013 Bankr. LEXIS 2353, at *27 (Bankr. E.D.N.Y. 2013), as each of the Debtors has received a discharge, creditors in those cases have received their distributions, and the cases are otherwise administratively completed at this juncture. While the sanctions awarded would undoubtedly provide additional resources to the office of the chapter 13 Trustee and Legal Services Vermont, both entities remain unhindered in pursuing their missions under their normal operating budgets while PHH's appeal proceeds. See Silverman v. Nat'l Union Fire Ins. Co. (In re Suprema Specialties, Inc.), 330 B.R. 93, 95 (S.D.N.Y. 2005) ("The only harm to the Trustee as representative of the estate would be a delay in receipt of attorney's fees for his own law

7

firm, which represents the Trustee in this matter. Thus, while Movants are at risk of suffering substantial harm if a stay is not granted, the Trustee is not likely to suffer such harm if a stay is granted."). Moreover, the Trustee's special counsel, who has vigorously and very competently represented the Trustee in this matter, is doing so on a pro-bono basis, "with no charge for his services to the trustee or the estates of these cases" (doc. # 106, p. 2).

However, since PHH has not shown it will suffer irreparable harm in the absence of a stay, the fact that it has demonstrated its adversaries in this litigation will not suffer substantial harm does not result in the scales being tipped in its favor for this prong. Rather, the "balance of harms" analysis is neutral and does not weigh in favor of either party.

### D. THE PUBLIC INTEREST

The final factor examines "the interest of third-parties who act in reliance on the bankruptcy court's ruling." In re 473 West End Realty Corp., 507 B.R. 496, 507 (Bankr. S.D.N.Y. 2014) (quoting Beneficial Homeowner Serv. Corp. v. Moreau (In re Moreau), 135 B.R. 209, 215 (N.D.N.Y. 1992)).

In the PHH Stay Motion, PHH offers no affirmative argument as to how the granting of a stay will advance the public interest; it merely states granting the stay is not contrary to the public interest. The Trustee asserts the granting of a stay harms the public interest in two respects: the public's interest "in seeing that the purposes and policies of the Bankruptcy Code are not frustrated" and "in the efficient administration of the bankruptcy system" (doc. # 140, p. 11). In the Reply, PHH states it is confident it will prevail on appeal, and recoup any sanctions monies it has paid to the Trustee and Law Lines, and therefore no public interest is served by compelling it to make those payments prior to adjudication of the appeal (doc. # 141, pp. 7–8).

This Court concurs with the Trustee that there is a salient public interest in ensuring the expeditious conclusion of chapter 13 cases and in the swift enforcement of sanctions against parties who violate federal rules and court orders. See In re Withrow, 2008 Bankr. LEXIS 2125, at **6–7 (Bankr. D. Mass. 2008) (finding it "hard to conceive how the public is better off if [movant's] payment of that sanction is deferred [through a stay pending appeal].") This Court observes, as well, that the instant contested matters raise several issues of first impression, each of the Debtors has been granted a discharge, and PHH has failed to demonstrate how the granting of a stay serves the public interest. In re Am. Land Acquisition Corp., 2013 Bankr. LEXIS 2353, at *31 (Bankr. E.D.N.Y. 2013) (finding the party seeking a stay pending appeal "bears the burden of demonstrating a legitimate and compelling public interest in support of a stay.") Taken together, these circumstances culminate in this factor weighing against granting the stay, but meriting only minimal weight in the analysis.

8

In assessing the factors in order of importance, see Nken v. Holder, 556 U.S. 418, 434 (2009), the Court finds PHH has met its burden of proof on the likelihood of success prong, PHH has not met its burden of proof on the irreparable harm prong, and the third and fourth prongs are both neutral and entitled to less weight, given the legal issues and procedural posture of this matter. The Court has determined that the first prong presents the most crucial considerations and therefore is entitled to the greatest weight. See In re Taub, 470 B.R. 273, 278 (E.D.N.Y. 2012) ("Because the Debtor has failed to demonstrate why she will suffer irreparable harm … she must clearly establish a substantial possibility of success on appeal."). Since PHH has prevailed on that prong, the Court finds that PHH has narrowly met its burden and will therefore issue a stay pending appeal.

## II. THE BOND

Having found that PHH has (narrowly) met its burden for a stay pending appeal, the Court turns to the question of whether PHH has shown cause to grant it an exception to the general rule that a party who is granted a stay should post a bond. Bankruptcy Rule 8007 "provides that the Court may condition the issuance of a stay upon the furnishing of a supersedeas bond or other appropriate security." In re Roussos, 2017 Bankr. LEXIS 389, at *18 (Bankr. C.D. Cal. 2017) (citing In re Swift Aire Lines, Inc., 21 B.R. 12, 14 (B.A.P. 9th Cir. 1982)). The caselaw interpreting Rule 8007 makes clear that bankruptcy courts have discretion in determining whether to waive the bond. "Moreover, where the movant seeks the imposition of a stay without a bond, 'the applicant has the burden of demonstrating why the court should deviate from the ordinary full security requirement.'" In re Sabine Oil & Gas Corp., 548 B.R. 674, 681 (Bankr. S.D.N.Y. 2016) (quoting In re DJK Residential, LLC, 2008 U.S. Dist. LEXIS 19801, *6 (S.D.N.Y. 2008)). See also Westpoint Stevens Inc. v. Aretex, LLC (In re Westpoint Stevens Inc.), 2007 U.S. Dist. LEXIS 33725 (S.D.N.Y. 2007) (movant seeking an unbonded stay has "the burden of demonstrating why no bond should be required.").

PHH insists "this Court has predicated its entire Remand Order on the fact that PHH is a financial institution of substantial means," PHH has the funds to pay the sanctions, and therefore, there is no reason PHH should need to post a bond (doc. # 104, p. 8). PHH adds that to require a bond would "instead be indicative of the severity of the sanctions levied by the Court's [Decision]" (doc. # 139, p. 12). It appears PHH is arguing that if the sanctions are not serious then the Court and Trustee should be confident PHH will have the money to pay them if/when it is required to do so and if, by contrast, the Court and Trustee doubt PHH will have the funds on hand when required to pay the sanctions, that, de facto, demonstrates the sanctions are "serious" and hence unenforceable. This argument is without merit and unavailing with respect to whether a bond is warranted here.

9

PHH has vigorously refused to acknowledge its violation of court orders and Rule 3002.1 and taken myriad steps to avoid paying sanctions for its misconduct. The requirement for a bond protects the Trustee from having to expend additional time and effort if an appellate court affirms the sanctions set forth in the Decision, which is a predominant purpose of a bond. See, e.g., Taylor v. Horizon Distribs., Inc., 2010 U.S. Dist. LEXIS 20226, at *4 (D. Ariz. 2010) (holding that movant failed to meet burden to waive the bond requirement for stay pending appeal because, "although the collection process should be relatively simple, [movant's] repeated attempts to avoid paying the judgment show that the collection process likely will continue to be difficult."). The posting of a bond also addresses PHH's concern that, absent a stay, it would be unable to recoup the sanctions paid to the Trustee and Legal Services Vermont. See BASF Corp. v. Old World Trading Co., 979 F.2d 615, 617 (7th Cir. 1992) ("A bond secures both sides: the winner is sure to recover if the judgment is affirmed, and the loser need not fear inability to recoup if the judgment is reversed.").

### CONCLUSION

Based on the arguments PHH and the Trustee have presented, and the unique nature of the question presented, the Court concludes the movant, PHH, has (narrowly) met its burden for a stay pending appeal. PHH is directed to post a bond, in a sum equal to the total amount of sanctions imposed by the Decision, pursuant to Bankruptcy Rule 8007, by July 15, 2019.[3]

SO ORDERED.

July 11, 2019
Burlington, Vermont

Colleen A. Brown
United States Bankruptcy Judge

---

[3] The Court is granting PHH four additional days to post the bond and directing that PHH file a notice of that bond by close of business on July 15, 2019. See, e.g., In re Motors Liquidation Co., 539 B.R. 676, 692 (Bankr. S.D.N.Y. 2015) (granting a stay pending appeal subject to a $10.6 million bond, but providing a 14-day period to allow movant to post the bond). In light of its resources, the Court does not doubt PHH's access to the necessary funds, but recognizes the process of obtaining and posting a bond takes some time.

10